In re Kevin T. BROWNING, Debtor.

Kevin T. BROWNING, Plaintiff,

v.

COUNTY OF STANISLAUS, FAMILY SUPPORT DIVISION, Defendant.

Bankruptcy No. 92–92100–7.
Adv. No. 92–9202.

United States Bankruptcy Court,
E.D. California.

Oct. 12, 1993.

George G. Logan, Atwater, CA, for plaintiff Kevin T. Browning.

David Ingersol, Modesto, CA, for defendant County of Stanislaus, Family Support Div.

## MEMORANDUM DECISION

JOSEPH W. HEDRICK, Jr., Bankruptcy Judge.

This matter comes before the court on Chapter 7 debtor Kevin Browning's ("debtor") complaint against Stanislaus County (the "County") to determine dischargeability of debt for pre-petition child support arrearages. After trial, the court took the matter under submission and now renders this memorandum decision.

### Facts and Background

The facts of this case are unfortunately neither unique nor uncommon. In 1985, debtor and Ms. Sandra Laird became parents to daughter Jessica. Ms. Laird apparently took sole responsibility for the child and, after three years, sought state public assistance. As a condition of eligibility for assistance, Ms. Laird assigned to the County any rights to support on her or Jessica's

behalf from debtor. At the time Ms. Laird assigned their rights to support, debtor had not been established to be Jessica's father or otherwise determined legally obligated to support Jessica. The County began providing public assistance in December 1985 and, in March 1992, sued debtor in state court on Jessica's behalf to establish paternity and set child support. The County also sought reimbursement for public assistance paid to Ms. Laird and Jessica.

Debtor filed his no-asset Chapter 7 bankruptcy in May 1992. The County was listed on debtor's schedules as his largest unsecured creditor with a $12,000 pre-petition claim. After receiving his discharge, debtor brought this action to have the County's debt determined discharged.

In earlier proceedings, the court granted relief from stay to the County (to the extent not covered by the police or regulatory power exception) allowing the state-court action to go forward except as to the County's claim for pre-petition arrearages. In those proceedings, debtor was legally determined to be Jessica's natural father and has been determined liable for post-petition child support arrearages and current child support. The County's $12,000 reimbursement claim for public assistance paid to Ms. Laird and Jessica remains pending or is subject to being reset for trial subject to the outcome of this adversary proceeding.

Debtor asserts that under the controlling and nearly identical Ninth Circuit case of *County of Santa Clara v. Ramirez (In re Ramirez)*, 795 F.2d 1494 (9th Cir.1986), the County's pre-petition debt for reimbursement of assistance paid to support Jessica has been discharged. The County argues that changes in relevant state and federal statutory law since *Ramirez* suggest reconsideration of the result and a determination by this court that the debt is nondischargeable.

### Discussion

As debtor asserts, the court's decision in this case is controlled by the Ninth Circuit's opinion in *Ramirez*. Of course, to the extent changes in statutory or applicable case law render the result in *Ramirez* inapplicable, the court may decide this case differently. *See Maxwell Hardware Co. v. Comm'r*, 343 F.2d 713 (9th Cir.1965).[1]

The facts in *Ramirez* are nearly identical to those presented here. Mr. Ramirez sought determination that Santa Clara County's $15,000 claim against him for public assistance reimbursement was dischargeable. As in this case, the county's reimbursement claim arose from his separated wife's assignment of support rights for her and her children as a condition for receiving public assistance. At the time Mrs. Ramirez assigned her support rights, Mr. Ramirez had not been judicially determined legally obligated to support his wife or children.

The court discussed grounds for nondischargeability under 11 U.S.C. § 523(a)(5)(A) and 42 U.S.C. § 656(b) [hereinafter referred to as "section 523(a)(5)" and "section 656(b)"] and determined that neither supported the county's position. The court also discussed the nature of the county's claim under Cal. Welf. & Inst.Code § 11350 [hereinafter referred to as "section 11350"] and determined that since liability under section 11350 arose by statute and not by assignment of an otherwise nondischargeable debt from Mrs. Ramirez or their children, that it could not be a nondischargeable debt under section 523(a)(5) or section 656(b). Finally, the court commented that a determination of dischargeability against the county favored children by leaving the responsible parent more able to pay present support for his children.

Here, the County's claim of nondischargeability relies on the same statutory provisions (as subsequently amended) discussed in *Ramirez*. The court will address nondischargeability under each of these provisions with reference to *Ramirez* and the changes in the law alleged by the County to change the result.

*County of Tulare v. Morris (In re Morris)*, 139 B.R. 17 (Bankr.C.D.Cal.1991) (J. Russell).

1. At least one Ninth Circuit bankruptcy court has determined that *Ramirez* is completely eviscerated by post-*Ramirez* changes to section 523(a)(5).

**42 U.S.C. § 656(b)**

■ Federal participation in state programs for aid to dependent families requires as a condition for eligibility that each applicant

"assign the State any rights to support from any other person *such applicant may have* (i) in his own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and (ii) which have *accrued* at the time the assignment is executed."

42 U.S.C.A. § 602(a)(26) (West 1991) (emphasis added).[2] Section 656(b) provides that an applicant's assigned rights that are child support obligations are nondischargeable in bankruptcy.

A debt which is a child support obligation assigned to a State under section 602(a)(26) of this title is not released by a discharge in bankruptcy under title 11, United States Code.

42 U.S.C.A. § 656(b) (West 1991).

In *Ramirez*, the Ninth Circuit focused on the concept of "accrued rights" and determined that neither Mrs. Ramirez nor the couple's children had any "accrued rights" to child support that were assignable when the assignment was executed. In making its determination concerning lack of accrued rights, the Ninth Circuit ignored the legislative history of sections 602(a)(26) and 656(b) which records an intent that "accrued rights" as used in section 602(a)(26) include child support rights not yet reduced to judgment. *See* S.Rep. No. 1356, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N. 8133, 8152–53. Instead, the court focused on California case law which provided, absent existence of a prior court order or other binding determination, neither a mother nor a child could obtain reimbursement for past support. *See Ramirez*, 795 F.2d at 1497 and cases cited therein.

The court's failure to address the legislative intent behind section 602(a)(26) and

656(b) was thus warranted—even if under federal law "accrued rights" could include rights not yet reduced to judgment or order, no judgment or order for *past* support could be obtained under state law.[3] Simply stated, the "accrued rights" to support assigned pursuant to section 602(a)(26) are limited to the rights that "the applicant may have." Under California law existing at the time *Ramirez* was decided, the Ninth Circuit determined that a spouse or child applying for aid had no legal rights to monetary support except where required by a court judgment or order. Moreover, such a judgment or order was limited to prospective support and could not be awarded retroactively. Although the children were theoretically entitled to "support" from Mr. Ramirez since birth, neither Mrs. Ramirez nor her children could obtain a judgment or order to enforce that right requiring payments for support obligations prior to bringing an action for support.

This court is not apprised of California case law since *Ramirez* overruling the cases cited by the Ninth Circuit. However, the County has cited changes in section 4700 of the California Civil Code which allegedly establish a right to sue for past child support.

When *Ramirez* was decided, section 4700 of the California Civil Code was consistent with the cases cited by the Ninth Circuit that limited child support rights to prospective relief only. Section 4700 remained unchanged regarding the allowance of prospective awards only until 1988 when the California Legislature added language to allow judgments for child support to include amounts established to be owing prior to bringing an action.

(2) A judgement or order for support may, in appropriate circumstances, based on all relevant facts, require one parent to pay to the other parent a reasonable amount for the cost of the support of the child for the shortest of the following periods *prior* to the filing of the action:

---

**2.** California has implemented this requirement with identical language. Cal.Welf. & Inst.Code § 11477(a) (West Supp.1993).

**3.** The dissenting opinion in *Ramirez* felt the legislative intent that "accrued rights" include those

not yet reduced to judgment was sufficient to warrant a different result in the case notwithstanding state law prohibiting retroactive support awards. *Ramirez*, 795 F.2d at 1499–500.

(A) Three years.

(B) The date of the mailing of the birth certificate or the mailing of the written notification by the custodial parent, pursuant to paragraph (3).

(C) The date of separation of the parties until the date of the filing of the action.

Cal.Civ.Code § 4700(a)(2) (added by Stats. 1988, ch. 1577) (emphasis added). The availability of retroactive support awards under this new version of section 4700 was specifically limited to children born on or after January 1, 1989, which was the effective date of the new legislation.

Section 4700 was again amended in 1990, but retained the language from the 1988 amendment allowing judgments for past child support for children born after 1989. The 1990 version was effective up to January 1, 1993, when a newly amended version of section 4700 would go into effect. This new version of section 4700, effective as of January 1993, deletes the provisions allowing judgments for past child support judgments.

The County's argument that section 4700 changes current law with respect to this case is subject to serious question. Even assuming that the 1988 and 1990 versions allowing retroactive support are determined to govern, Jessica would appear to fall outside their provisions. Those versions of section 4700 only apply to children born after 1989. Jessica was born three years too early in 1985.

Based on the foregoing, when Ms. Laird assigned her and Jessica's accrued rights to support to the County, those rights included any judgments or orders for child support established presently or in the future for past child support. Although it would appear that the County may have difficulty in establishing a right of Ms. Laird or Jessica for past support, to the extent that the County is able to do so, that debt is determined nondischargeable under section 656(b).

## 11 U.S.C. § 523(a)(5)

The Ninth Circuit decided *Ramirez* based on a version of section 523(a)(5) that limited nondischargeability to support debts that arose from a "separation agreement, divorce decree, or property settlement." Because Mrs. Ramirez' debt for child support did not arise from any of the foregoing, the Ninth Circuit summarily affirmed the bankruptcy and district courts which held that, even if assigned properly to the state to retain nondischargeable status, the debt was dischargeable.

The version of section 523(a)(5) considered in *Ramirez* has been amended twice and now provides nondischargeability for any debt

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree **or other order of a court of record,** determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, **or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State)**

11 U.S.C.A. § 523(a)(5) (West 1993) (bolded text indicates amendments enacted July 10, 1984, by Pub.L. 98–353 § 454(b), 98 Stat. 375; underlined text indicates amendments enacted Oct. 27, 1986, by Pub.L. 99–554 § 281, 100 Stat. 3116). The amendments (1) extend nondischargeable status to support debts established by any order of a court of record and those determined by governmental units in accordance with state or territorial law and (2) expand nondischargeable status to any debts assigned to federal or state governments, not just those assigned under the Social Security Act provisions.

The amendment extending nondischargeability to child support debts determined by any court of record or by governmental units is significant to this case because, like the facts in *Ramirez,* there is no divorce decree, separation agreement, or property settlement agreement that serves as a basis for nondischargeable child support. The amendments give the County opportunity to establish a nondischargeable support debt on Jessica's behalf through any available adminis-

trative [4] or judicial means, including through the presumably pending state-court proceeding against the debtor. The further amendments allowing nondischargeable child support debts to retain nondischargeable status when assigned to federal and state governments do not directly affect this case because Ms. Laird assigned her and Jessica's rights to support under the Social Security Act—which was allowed under the prior version of section 523(a)(5)(A) and has been retained, although made superfluous, in the amended version.

■ Although not extensively discussed by the parties, the fact that there was no outstanding court order, agreement, or determination establishing support when debtor filed bankruptcy or when Ms. Laird assigned her and Jessica's support rights does not affect the court's determination regarding dischargeability. While the *Ramirez* discussion of section 523(a)(5) may be construed to require that the debt for child support be liquidated or fully matured prior to bankruptcy filing or assignment to the state, such a reading is improper. First, as mentioned in this court's discussion of section 656(b), the Ninth Circuit was primarily concerned with legal rights under state law, which at the time denied spouses and children awards for past child support. Thus, under state law existing at the time *Ramirez* was decided, a debtor could have no debt for child support until liquidated. If the County obtains an award for past child support based on its assertion that state law no longer limits child support awards to prospective relief only, any reading of *Ramirez* that would impose a limitation that child support be established prior to filing or assignment under section 523(a)(5) is overbroad. Second, the Bankruptcy Code defines "debt" as "liability on a claim," 11 U.S.C.A. § 101(12) (West 1993), and "claim" as "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C.A. § 101(5)(A) (West 1993). Section 523(a)(5) excepts from discharge any "debts" to a spouse or child for child support. With no specific legislative history for guidance, it is this court's opinion that Congress could not have meant to circumscribe and limit the liberal definition of "debt" and "claim" to include only liquidated and matured rights on the date of debtor's bankruptcy filing or assignment of debt by the spouse or child.[5]

---

**4.** The legislative history of section 523(a)(5) concerning these amendments does not delineate what type of judicial or administrative proceedings suffice. However, the history suggests a sweeping inclusion.

> This provision will expand the exception to discharge in 11 USC 523(a)(5) to embrace support determinations involving various types of processes or procedures (e.g. administrative, expedited judicial) and various forms of determinations (e.g. rules, orders). Such determinations may be made by hearing officers or commissioners of agencies, subagencies, departments or courts of counties, municipalities or states—to cite some examples only.

H.R.Conf.Rep. No. 958, 99th Cong., 2d Sess. 47–48 (1986), *reprinted in,* 1986 U.S.C.C.A.N. 5227, 5248–49.

> Children are dependent on parental support regardless of whether support determinations result from court proceedings, administrative procedures, or expedited judicial processes. The Department of Health and Human Services has pointed out that "[a]llowing support debts established through administrative procedures to be discharged in bankruptcy provides a loophole to certain absent parents to eliminate their financial responsibility an may

discourage states from implementing and using these more efficient and effective means of obtaining child support." It doesn't matter to the financially dependent child whether the support determination is made by a judge, hearing officer, or commissioner. The child's needs are the same regardless of whether the governmental entity involved in the determination is an agency, subagency, department, or court of a county, municipality, or State. The form of the determination—whether it is denominated a rule or an order, for example—also is unimportant from the child's standpoint. Paternity determinations in administrative proceedings are no less significant to the welfare of the children than paternity determinations in judicial proceedings. The essential point is that our society must recognize the needs of children for support—and must not compromise that important principle for reason extraneous to a child's welfare.

132 Cong.Rec. H9002 (daily ed. Oct. 2, 1986) (remarks of Rep. Hyde).

**5.** The Ninth Circuit has held in analogous circumstances under the drunk driving exception to discharge found in prior section 523(a)(9) that even where Congress mentions a "judgment" in nondischargeability legislation, that it does not

Based on the foregoing, the court determines that to the extent that the County has or does establish debtor's liability for past child support owed to Ms. Laird or Jessica which was assigned to the County, that debt is determined nondischargeable.

## California Welfare and Institutions Code § 11350

█ The prior and current version of section 11350 provides to counties a limited right to reimbursement from absent parents where aid is provided to families with dependent children. The Ninth Circuit commented on the prior version of section 11350 in *Ramirez* noting that the county's rights to reimbursement derived from operation of statute and not from any right assigned from debtor's spouse. Accordingly, the debt was not covered by the nondischargeability provisions of section 656(b) because it was not a right to support assigned by Mrs. Ramirez.

Section 11350 was substantially rewritten in 1991 to emphasize that a county's right to reimbursement (in the absence of an existing child support order) is limited to the amount of "support which would have been specified in an order for the support and maintenance of the family" determined according to identical guidelines for fixing child support. Cal. Welf. & Inst.Code §§ 11350(a), (c) (West Supp.1993) (current text as amended by Stats.1991, c. 110 § 20). The County argues that these revisions abrogate the Ninth Circuit's characterization of the debt as "owed" to the County and make clear that the debt is actually owed or should be deemed owed to dependents.

Although this court is inclined toward the County's characterization, the revisions to section 11350 do not change that the debt is still owed directly to the County.[6] The County's nondischargeability claim is and must be based on section 656(b) or section 523(a)(5). Those nondischargeability statutes directly or indirectly require that the child support debt assigned to the County be owed respectively to the "applicant" or "to a spouse, former spouse, or child of the debtor." Accordingly, to the extent the County's debt as hereafter established is based *solely* on section 11350, it is determined discharged.

## Equitable Considerations

Apparently as a post-script in *Ramirez*, the Ninth Circuit discussed equitable considerations that supported it conclusion that the county's debt was discharged. The court's concern was that Mr. Ramirez would be hindered in meeting current support obligations if the county was garnishing wages for past support.

> When the choice lies between forcing a parent to pay current support obligations to his children, equity and concern for the current welfare of the children require that we discharge the past obligation.

*Ramirez*, 795 F.2d at 1499.

Here, the court has determined that the County's debt is nondischargeable based on applicable state and federal law. Notwithstanding, the court agrees with the concerns articulated by the Ninth Circuit that payment of current support obligations should normally take precedence over collection of past support—especially where the debt has been assigned. The court is persuaded, however, that these concerns are adequately addressed by the policies of the County's Family Support Division which subordinate reimbursement for past child support to payment of current support from any funds voluntarily or involuntarily collected. *See* FSD letter No. 92–19, from Leslie L. Frye, Chief of Child Support Program Branch of Dep't of

---

require a race to the courthouse to obtain the judgment before filing. *See In re Hudson*, 859 F.2d 1418 (9th Cir.1988).

Congress amended section 523(a)(9) in 1990 to remove any doubt that the debt had to be liquidated prior to filing.

**6.** The County has other options to collect such as suing as assignee of Jessica for back child support. *See* Cal.Welf. & Inst.Code § 11350.1 (West Supp.1993) ("[I]n any action brought by the district attorney for child support of a minor child or children, the action may be prosecuted in the name of the county on behalf of the child, children, or caretaker parent.") Of course, since liability under section 11350 is limited to what would have been awarded under a support order, there is really only a technical distinction between suing on behalf of a family member or directly on behalf of the state. While other courts have been willing to overlook this technical distinction, *see Oregon v. Richards*, 45 B.R. 811 (D.Or.1984), the Ninth Circuit refused to in *Ramirez*.

Social Servs. to all state District Attorneys and Title IV–D Agencies (July 15, 1992) (containing current revisions to child support collection procedures manual).

### CONCLUSION

In summary, the court determines that to the extent the County establishes a debt for past child support owed to and assigned by Ms. Laird or Jessica, it was not discharged and is determined nondischargeable under section 656(b) and section 523(a)(5)(A). However, to the extent the County's debt is based solely on section 11350, it is determined discharged.

The County shall be permitted to continue or reset its pending state-court action against debtor. This court shall, however, retain jurisdiction over this matter as is necessary until the debt for child support is liquidated.

The court directs counsel for County to prepare proposed findings of fact and conclusions of law and judgment consistent with the court's decision. These documents shall be served on all necessary parties and lodged with the court. If no objection is received by the court within ten days, the documents will be signed and entered.