In re Jane DOE, Debtor.

Aleta BEAUPIED, Plaintiff,

v.

Jane DOE, Defendant.

Bankruptcy No. 95–32027BDMM.
Adv. No. 95–3384DM.

United States Bankruptcy Court,
N.D. California.

March 5, 1996.

Melanie Darling, Law Offices of Max Cline, Oakland, CA, for Debtor.

Kenneth R. Wachtel, Leland, Parachini, Steinberg, Flinn, Matzger & Melnick, San Francisco, CA, for Father.

Brian J. McCaffrey, San Francisco, CA, for Aleta Beaupied.

## MEMORANDUM DECISION

DENNIS MONTALI, Bankruptcy Judge.

### I. *Introduction* *

The debtor in this Chapter 13 case ("Debtor") has proposed a Chapter 13 plan whereby she will pay secured creditors in full, with no dividend to be paid to unsecured creditors. The plan attempts to deny priority (and thus leave completely unpaid) attorney's fees and expenses that are part of a state court judgment in an action for the custody of Debtor's minor daughter ("Child"). The attorney's fees are owed to Aleta Beaupied, Esq. ("Beaupied") and the expenses are claimed by Child's father ("Father").

Beaupied, the court appointed attorney for Child in the custody proceeding, filed this adversary proceeding to establish that the debt for her fees would be nondischargeable under § 523(a)(5) [1], and thus should be given priority under § 507(a)(7).

Father, in his objection to confirmation of the plan, seeks to establish priority status under § 507(a)(7) for fees he has advanced to court-appointed experts.

Because both Father's and Beaupied's matters involve essentially the same issues, they have been combined by agreement of the parties and the court. The court heard the matter on January 22, 1996. Melanie Darling, Esq. appeared for Debtor, Kenneth

---

* The court has decided to refer this Memorandum Decision for publication. The Debtor's name will be replaced with a fictitious name in the copies delivered to the publisher. The court's consent to publication is expressly conditioned upon the continued concealment of the identity of the mother, father and child who are the principals in this dispute.

1. Except where otherwise noted, all section references that follow are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

R. Wachtel, Esq. appeared for Father, and Brian J. McCaffrey, Esq. appeared for Beaupied. For the reasons set forth below, the court exercises its discretion to declare both the whole of Beaupied's fees and the whole of Father's expenses entitled to reimbursement under a state court order entitled to priority under § 507(a)(7). Thus, confirmation of Debtor's Chapter 13 plan must be denied.

## II. *Factual Background* [2]

Although Father and Debtor were never married, Father is the undisputed father of Child. On July 8, 1992, Debtor filed a complaint in the San Francisco Superior Court ("State Court"), *[Debtor] v. [Father]* (Case No: FL 003002) against Father to establish his parental relationship. She also sought child custody of and visitation with her daughter. During the course of the custody action, various neutral experts were appointed by the State Court for certain tasks and Beaupied was appointed to represent Child's interests.

Judgment in the State Court was issued on May 17, 1995, awarding sole legal and physical custody of Child to Father. The order also established the amounts of expert and attorney's fees that Debtor and Father were to pay. Debtor's obligations pertinent to Father and Beaupied are discussed below.

The State Court judgment required Father and Debtor to share the costs of the various neutral experts given tasks by the State Court in the custody case. These experts, their roles in the custody case, and the State Court allocation of responsibility for their fees follows:

1. Dr. Alex C.N. Leung was appointed by San Francisco Child Protective Services (stipulated by Debtor) for the purpose of determining the truth and accuracy of Debtor's allegations of child molestation against Father. Dr. Leung's fees were to be shared equally, with Debtor ordered to pay $1,462.

2. Dr. Alice Green was the Parent/Child Visitation Supervisor retained to supervise visitation between Father and Child during the period Debtor's false allegations of child molestation against Father were being investigated. Dr. Green's fees were to be shared equally, with Debtor ordered to pay $3,975.

3. Dr. Stephen Seligman was appointed by the State Court to prepare and present child custody evaluations in the custody action. His fees were to be shared equally, with Debtor ordered to pay $7,667.

4. Dr. Donald B. Cliggett was appointed by the State Court to perform psychological tests on Debtor and Father for the purpose of preparing and presenting the child custody evaluation. His fees were to be shared equally, with Debtor ordered to pay $6,500.

5. Dr. Ernest A. Dernburg is Child's court-appointed therapist before and after the State Court custody action. His fees were to be shared equally, with Debtor ordered to pay $5,890.

6. Jeanne Ames is the family law mediator, who, pursuant to the stipulation of all parties, acted as special master/referee in the early stages of the custody action. The State Court judgment allocated Father two-thirds and Debtor one-third responsibility for her fees, with Debtor ordered to pay $6,887.

Since Father advanced most of Debtor's share of the neutral expert fees, the State Court found him entitled to reimbursement to the extent he "paid more than his share as allocated by the court." In addition to the above neutral expert fees totaling $32,381 that Debtor is to pay, Dr. Dernburg has accrued additional fees since the date of the State Court judgment which Father contends are entitled to similar priority. In total, Father has proven that he advanced $33,692 of Debtor's share. Father has requested the court find this entire amount entitled to § 507 priority.

Besides reimbursing Father for the expert's fees, Debtor was also ordered to pay one-third of Beaupied's fees and costs up to February 28, 1995, or $10,579. On June 13, 1995, the State Court issued an *order to clarify* its earlier judgment, specifically noting that Debtor's obligations included paying

2. The following discussion constitutes the court's findings of fact and conclusions of law. Fed.
R.Bankr.P. 7052(a).

one-third of all of Beaupied's additional charges billed after February 28, 1995. Thus, Beaupied seeks, as of November 30, 1995, a determination of § 507 priority as to $14,694.70 of her claims for fees against Debtor.

## III. *Discussion*

### A. *Determining whether a claim for child support is a priority claim in a Chapter 13 case should involve consideration of cases interpreting § 523(a)(5)*

In 1994, Congress expanded the protections offered to spousal and child support obligations under the Bankruptcy Code.[3] In this regard, a new § 507(a) priority claim was added for:

> (7) Seventh, allowed claims for debts to a spouse, former spouse, *or child of the debtor,* for alimony to, maintenance for, or *support of such* spouse or *child, in connection with* a separation agreement, divorce decree or other *order of a court of record,* determination made in accordance with state or territorial law by a governmental unit, or property settlement, but not to the extent that such a debt—
>
>> (A) is assigned to another entity, voluntarily, by operation of law, or otherwise; or
>>
>> (B) includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support

11 U.S.C. § 507(a)(7) (emphasis added), as amended by the Bankruptcy Reform Act of 1994 § 304(c), 108 Stat. 4133. This new provision is made applicable in Chapter 13 cases under § 1322(a)(2), mandating full payment of "all priority claims under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim" before a plan may be confirmed. 11 U.S.C. § 1322(a)(2).

The application of the new § 507(a)(7) in a Chapter 13 case appears to be an issue of first impression in Ninth Circuit. However, the similarity in language between § 507(a)(7) and § 523(a)(5) invites the conclusion that the case law interpreting the latter should be considered in applying the former.[4] *See* 3 L. King, *Collier on Bankruptcy,* ¶ 507.04[7] (15th ed. 1995) ("The language of this new priority [§ 507(a)(7) ] follows the language of the exception from discharge for alimony, maintenance and support.... The reported cases and commentary on section 523(a)(5) should be considered ...."). This conclusion was also reached in *In re Grady,* 180 B.R. 461 (Bankr.E.D.Va.1995):

Notwithstanding the fact that the issue was brought under

> § 507(a)(7)(B), the plethora of case law discussing whether debts are "actually in the nature of support" under § 523(a)(5) is applicable and useful precedent in determining whether such debts should receive priority treatment.

*Id.* at 464. This result is dictated by the general rules of statutory construction: that identical words and phrases used in different parts of the same act, such as the identical language in § 507(a)(7) and § 523(a)(5), are intended to have the same meaning. *Grady,* 180 B.R. at 464 (citing *Gustafson v. Alloyd Co.,* —— U.S. ——, ——, 115 S.Ct. 1061, 1067, 131 L.Ed.2d 1 (1995)).

---

**3.** The Bankruptcy Reform Act of 1994, Pub.L. No. 103–394 (enacted Oct. 22, 1994, and effective in cases filed on or after that date).

**4.** 11 U.S.C § 523(a) excepts from discharge of an individual debtor any debt:

> (5) to a spouse, former spouse, or child of the debtor, for alimony to maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—
>
>> (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise assigned (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or
>>
>> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;
>
> 11 U.S.C. § 523(a)(5).

The court agrees with the reasoning of *Grady.* Unless the literal application of a statute produces a result at odds with the intent of Congress, the plain meaning should be conclusive. *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1030–31, 103 L.Ed.2d 290 (1989). The court cannot discern any meaningful reason why Congress would have intended for the same language employed in § 507(a)(7) and § 523(a)(5) to be treated differently. Thus, for the purposes of this opinion, whether priority status be granted shall be dictated by first considering whether such debts would be dischargeable under § 523(a)(5).[5]

### B. Fees Due State Court Appointed Attorney Representing Child in Custody Action Constitute "Support" and are Entitled to Priority Under § 507(a)(7)

Both Father and Beaupied's claims require the court to reconcile the tension between the purpose of the Bankruptcy Code, to give the debtor a fresh start, and certain exceptions to that fresh start for support obligations to a spouse, former spouse, or child. On the one hand, the limits on dischargeability of debts contained in § 523 should be construed narrowly so as to assure that the basic policy of giving the honest debtor a fresh start is not frustrated. *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915); *In re Klapp,* 706 F.2d 998, 999 (9th Cir.1983) (exceptions to discharge are to be construed strictly against creditors and in favor of the debtor's right to discharge). On the other hand, authority of equal weight instructs the court that Congress has no intention of relieving debtors of the obligation to maintain and educate their children. *Wetmore v. Markoe,* 196 U.S. 68, 77, 25 S.Ct. 172, 175–76, 49 L.Ed. 390 (1904). Further, the legislative history of the Bankruptcy Reform Act of 1994 indicates the need for "greater protection for alimony, maintenance and support obligations owing to a spouse, former spouse, or child of a debtor in bankruptcy." [6]

While the court recognizes a split in this area,[7] persuasive authority in the Ninth Circuit and other circuits indicates that attorneys fees for the attorney representing a child in a custody action should be nondischargeable in a § 523(a)(5) case, and thus should be entitled to priority under § 507(a)(7).

Under the former Bankruptcy Act, the Ninth Circuit in *In the Matter of Catlow,* 663 F.2d 960 (9th Cir.1981), agreed with the district court's affirmation of the bankruptcy court's finding that an attorney's fees award in Arizona child custody proceeding was nondischargeable. *Catlow* held that "as Catlow's debt for legal services is founded upon his state-created obligation to support ... the debt is nondischargeable." *Id.* at 963. Beaupied has argued that the Arizona statute[8] at issue in *Catlow* is similar to California Family Code § 3153[9] in that both direct the state court to order the parties to pay reasonable amounts for attorney's fees in child custody actions. The court agrees with this analysis.

---

5. By virtue of § 1328(a)(2), debts of this nature are not dischargeable in Chapter 13 cases.

6. 140 Cong.Rec. H10752, H10770 (daily ed. Oct. 4, 1994) (statement of Chairman Brooks).

7. *In re Jones,* 9 F.3d 878, 880–881 (10th Cir. 1993) ("The circuits have split on the issue of whether a post divorce child custody action is property considered to be in the nature of support.")

8. Ariz.Rev.Stat.Ann. § 25–324 (1976) provided: The court from time to time, after considering the financial resources of both parties, may order a party to pay a reasonable amount to the other party for the costs and expenses of maintaining or defending any proceeding under this chapter. For the purposes of this section costs and expenses may include attorney's fees, deposition costs, and such other reasonable expenses as the court finds necessary to the full and proper presentation of the action ...

9. Cal.Family Code § 3153(a) states: If the court appoints counsel under this chapter to represent the child, counsel shall receive a reasonable sum for compensation and expenses, the amount of which shall be determined by the court. Except as provided in subdivision (b), this amount shall be paid by the parties in the proportions the court deems just.

However, *Catlow* was decided on the basis of § 17(a) of the former Bankruptcy Act [10] and the court expressly reserved the question of whether the same result would be reached under the present Bankruptcy Code.[11] While approaches to the issue have varied in the circuits, several courts have answered in the affirmative.

In a case under the Bankruptcy Code, *Matter of Gwinn,* 20 B.R. 233 (9th Cir. BAP 1982), the Bankruptcy Appellate Panel found that the rules excepting attorney's fees in a custody action from discharge established in "*Catlow* have not been modified by the new Bankruptcy Reform Act." 20 B.R. at 235. *Pauley v. Spong (In re Spong),* 661 F.2d 6 (2d Cir.1981) echoes this view on the impact of the new code: "Congress could not have intended that federal courts were to formulate bankruptcy law of alimony and support in a vacuum." 661 F.2d at 9. *Spong* further noted that the majority of courts still looked to state law, and decided to "treat counsel fees as being within the definition of alimony, maintenance, and support." *Id.* Recent cases from the Fifth Circuit and Tenth Circuit have also decided likewise.[12] Debtor argues that the debt would be dischargeable under § 523(a)(5) on the basis of *In re Spencer,* 182 B.R. 263 (Bankr.E.D.Cal.1995). *Spencer* involved a reimbursement obligation owed to the county by a Chapter 7 debtor for support of minor children while they were lodged in juvenile hall. The court granted summary judgment for the debtor over the county's objection to discharge because the debt "pursuant to Cal.Welf. & Inst.Code § 903 was owed and payable directly" to the county. *Id.* at 268.

The *Spencer* analysis maintained that the debt must be "*owed directly to the debtor's children,*" and not just "*arising from support of a debtor's children.*" 182 B.R. at 268 (emphasis in original). *Spencer* claimed that to do otherwise would "legislate" expansions

to § 523(a)(5). *Id.* For its support, *Spencer* cited *In re Linn,* 38 B.R. 762 (9th Cir. BAP 1984) for the statement, in dicta, that "[u]nder a literal application of § 523(a)(5), to be nondischargeable a debt must be *owed specifically to the 'spouse, former spouse, or child.'*" *Spencer,* 182 B.R. 263, 267 (emphasis added in *Spencer*).

It appears that *Linn* was incorrectly relied upon by *Spencer.* The sentence immediately following the quoted language from *Linn* recognizes that "cases have created an exception to this requirement where the debt is owed to the attorney who represented the debtor's spouse." 38 B.R. 762, 763. *Linn* cited the *Spong* and *Gwinn* decisions (discussed *supra*) for this case law exception. *Id. Linn* not only recognized but also distinguished this case law exception, by concluding that because the *Linn* debtor *alone* was ordered to pay attorney's and psychiatrist's fees for the minor child, the former spouse was not liable, making the debt dischargeable. *Linn,* 38 B.R. 762 at 762–763. For these reasons, the court does not find *Spencer* instructive.

■ On the other hand, the *Catlow* reasoning remains highly persuasive. When a state court decides in the interest of a minor child to appoint an attorney to protect her interest in a custody proceeding, and then apportions responsibility for the fees between the parents of the child, the fees are "in the nature of support" for the child. These are the facts of the instant case. The State Court appointed Beaupied as Child's attorney in the custody proceeding and responsibility for Beaupied's fees was apportioned by the State Court under the directive of state statute [13] (Debtor was ordered to pay one-third of the fees in conjunction with custody case). Thus, it is a state statute created support obligation, the same as the one in *Catlow,* that is held to be nondischargeable.

**10.** 11 U.S.C. § 35(a)(7) (1976), repealed by the Bankruptcy Reform Act of 1978, Pub.L. 95–598, §§ 402(a), 403(a), 92 Stat. 2549 (Oct. 1, 1978).

**11.** 663 F.2d 960, 961 n. 1.

**12.** *Matter of Dvorak,* 986 F.2d 940, 941 (5th Cir.1994) (duty to pay portion of guardian ad litem's attorney's fees nondischargeable because the custody hearing was "clearly for [the child's] benefit and support, as the purpose of the hearing was to decide who could provide the best home for her"); *In re Jones,* 9 F.3d 878, 882 (10th Cir.1993) (following *Dvorak* to find nondischargeable court-ordered attorney's fees arising from post-divorce custody actions "deemed in the nature of support under § 523(a)(5) as being incurred on behalf of the child").

**13.** Cal.Family Code § 3153, relevant text quoted *supra* note 9.

■ Debtor has also plead in the alternative, contending that if Beaupied's fees are found nondischargeable, they should still be denied priority because the fees are unreasonable. Debtor suggests the court apply the "manifestly unreasonable" test of *In re Smith*, 131 B.R. 959 (Bankr.E.D.Mich.1991). *Smith* concerned the dischargeability of a property settlement of $25,000, holding that if that amount was intended to function as support, the nondebtor former spouse did establish that the amount and terms were reasonable by establishing that debtor was able to pay. *Id.* at 973.

The court finds *Smith* distinguishable: *Smith* was a case of a marital property settlement that *might* have been intended as support, thus reasonableness may be called into question. On the other hand, the intentions of the State Court in the present case are clear. The State Court had a statutory duty to appoint counsel only if in "the best interest of the minor child," Cal.Family Code § 3150 (West, 1994), and the to determine a "reasonable" sum for counsel's compensation. Cal.Family Code § 3153 (West, 1994). In carrying out this duty, the State Court issued a detailed order stating the exact amount due Beaupied.[14] . The State Court further clarified the order by noting that it covered Beaupied's fees for representing Child after the initial custody action. That the State Court, in appointing Beaupied as Child's attorney, and granting her fees, intended to accomplish any good other than protecting Child's interests has not been proven to this court. For the above reasons, the entire amount of Beaupied's attorney's fees would be nondischargeable under § 523(a)(5) via § 1328(a)(2) and thus is entitled to priority under § 507(a)(7).

C. *Reimbursement Due Father for Court Appointed Neutral Experts in Custody Action Constitutes "Support" and is Entitled to Priority Under § 507(a)(7)*

The analysis for the fees of the court-appointed experts is the same as for Beaupied's fees. The court must determine whether they constitute "support" for Child. Father contends that the fees so do on the basis of Tenth Circuit decisions that the court finds persuasive and will follow.

The Tenth Circuit recently concluded that a debtor's court ordered psychologist's and guardian ad litem's fees resulting from divorce/child custody proceedings were nondischargeable. *In re Miller*, 55 F.3d 1487 (10th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 305, 133 L.Ed.2d 210 (1995). The *Miller* court followed the emphasis of another Tenth Circuit case on the "determination of whether a debt is in the nature of support, rather than the identity of payee." 55 F.3d 1487, 1490, citing *In re Jones*, 9 F.3d 878 (10th Cir.1993).

*Jones* held that a debt from post-divorce custody proceedings to pay child support and children's health insurance was non-dischargeable because the term "support" is entitled to broad application, and generally encompasses the issue of custody. Besides basing its decision on the intent of Congress that genuine support obligations not be discharged, 9 F.3d at 880 (citing *Shine v. Shine*, 802 F.2d 583, 588 (1st Cir.1986)), the court also noted that deciding otherwise would require "extensive hearings and fact-findings into the parties' subjective motivations which is more appropriate to the state court than a bankruptcy court." *Jones*, 9 F.3d at 881.

While the court is not bound by either *Jones* or *Miller*, their logic remains highly persuasive. Even with a strict focus, the sole issue in this child custody action was the care and support of Child. Since Debtor and Father are unmarried, no marital dissolution alimony, support or property settlement issues were involved in the State Court order. The fees Debtor would like to discharge arose from a proceeding initiated for the sole benefit of her daughter's interest.

■ The neutral expert fees in question resulted from evaluating the respective

---

14. The May 15, 1995 State Court order clearly states: "Ms. Beaupied: [Father] shall pay two-thirds and [Debtor] one-third of her fee. [Debtor] shall pay $10,579 and [Father] $21,157."

The later clarification order issued on June 13, 1995 added that: "[Debtor] shall bear one-third and [Father], two-thirds, of Ms. Beaupied's charges billed after February 28, 1995."

abilities of Debtor and Father to provide adequate care and support for Child, as well as for counseling Child during the course of the custody action to protect her emotional and mental state.[15] Debtor cannot deny that such fees were in direct "support" of Child's interest. The debt for these fees arose "in connection with a court order" granting custody to Father. A finding of nondischargeability of the neutral experts' fees is required under § 523(a)(5). Thus, in this Chapter 13 case, Father's claims are entitled to § 507(a)(7) priority for all of the neutral expert fees claimed. The court holds that the State Court's order requiring Debtor to reimburse Father for paying "more than his share" to these experts does not constitute an assignment of these debts that would take away priority status under § 507(a)(7)(A).[16]

■ While Debtor has not addressed the "support" nature of the expert fees, she has requested that the court apply the § 523(a)(15) balancing test in her favor.[17] This subsection of § 523, however, is not at issue in this case. Neither the language nor the substance of § 523(a)(15) is relevant to a determination of priority status of a claim under § 507(a)(7). While an express § 523(a)(5) exception appears in § 1328(a), the section does not provide an exception for debts under § 523(a)(15). *See* 5 L. King, *Collier on Bankruptcy,* ¶ 1328.01[d][iii] & n. 50a (15th ed. 1995). This issue is immaterial

to this case, since the court has held that the debts are entitled to priority in the Chapter 13 plan under § 507(a)(7), based on the conclusion that the debts would be covered by § 523(a)(5). There are no debts left to consider under § 523(a)(15) even if this case were in Chapter 7.

## IV. *Disposition*

For the reasons stated above, the entirety of Beaupied's attorney's fees that Debtor was ordered to pay under the State Court judgment are entitled to priority under § 507(a)(7). All of the neutral experts' fees Debtor was ordered to reimburse Father under the State Court judgment are also entitled to § 507(a)(7) priority. Counsel for Father and Beaupied should prepare and submit one agreed form of judgment consistent with the foregoing, to be entered in both the adversary proceeding and the main case, and should comply with B.L.R. 9021-1 and B.L.R. 9022-1.

15. For example, Dr. Leung's role in the action was to determine the validity of Debtor's allegations against Father of child molestation (later proven false). This determination was required to assure the State Court that if it awarded custody to Father, Child would not be endangered.

16. Father's zealousness in the timely payment of the expert fees is understandable. Without prompt payment of the fees, the work of the experts may have been impeded or delayed, to the detriment of Child's interest.

17. The Bankruptcy Reform Act of 1994 added subsection 15 to § 523(a), creating a new exception to discharge for debts "not of the kind" covered by § 523(a)(5) but nevertheless:

[I]ncurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependant of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor;

Pub.L. No. 103–394 § 304(e) enacted on Oct. 22, 1994 and effective on cases filed on or after that date. One court has stated that §§ 523(a)(5) and 523(a)(15) are "merely alternate theories" for granting an exception from discharge in a Chapter 11 case. *In re Butler,* 186 B.R. 371, 375 (Bankr.D.Vt.1995) (ex-spouse objected to discharge of debts owed under divorce decree).