**In re Rufus BEVERLY, Jr., Debtor.**

**Bankruptcy No. 95–43411.**

United States Bankruptcy Court,
W.D. Missouri.

May 22, 1996.

David A. Reed, Kansas City, KS, Don Cowan, Mo. Dept. Social Services, for Debtor.

Richard V. Fink, Trustee, Kansas City, MO.

### MEMORANDUM ORDER

FRANK W. KOGER, Chief Judge.

Debtor filed for relief under Chapter 13 of the Bankruptcy Reform Act and seeks to have his plan of reorganization confirmed. The parties dispute whether a debt listed by Debtor for child support arrearages is a priority debt requiring full payment under the plan and whether the debt is dischargeable. This Court finds the debt for child support arrearages is a priority debt and nondischargeable, and therefore cannot confirm Debtor's plan as submitted because the debt is listed as a non-priority unsecured debt and will not be paid in full under the plan.

Debtor lists in his schedules, as an unsecured nonpriority claim, a debt in the amount of $33,239.15 in child support arrearages. He asserts it is a nonpriority claim because it had been assigned by his children [or their mother(s)] to another party. He lists the creditor's name and address as "Child Support Enforcement Unit, 1730 Prospect, Suite 101, Kansas City, MO 64106." He also states in his schedule that the debt was incurred in 1980 as "child support arrearages assigned to [a] public agency." In his proposed plan, Debtor has classified this claim with his other general unsecured claims and it is to receive a percentage to be determined by the Trustee based on filed and allowed claims.

Under a Chapter 13 plan of reorganization, all debts entitled to priority under § 507[1] must be paid in full within the life of the plan unless the claimant consents to something different. 11 U.S.C. § 1322(a)(2). Section 507 lists the priority claims requiring payment in full. It provides, in relevant part:

#### § 507. Priorities.

(a) The following expenses and claims have priority in the following order:

(7) Seventh, allowed claims for debts to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that such debt—

---

1. Unless otherwise indicated, all statutory references are to the Bankruptcy Reform Act of 1978.

11 U.S.C. §§ 101—1330.

(A) is assigned to another entity, voluntarily, by operation of law, or otherwise....

Absent the assignment issue, there would be no question but that Debtor's obligation for child support arrearages would be a priority claim pursuant to § 507(a)(7). However, Debtor asserts that because the debt was assigned, it is excepted from § 507(a)(7) pursuant to § 507(a)(7)(A) and does not enjoy priority status.

■ Section 507 was amended in 1994 to add subsection (a)(7) to the list of priority claims,[2] so there is very little case law interpreting or applying it, and it appears this is a case of first impression in the Eighth Circuit. This Court did find two cases from other courts interpreting the new § 507(a)(7): *In re Doe*, 193 B.R. 12 (Bankr.N.D.Cal.1996), and *In re Grady*, 180 B.R. 461 (Bankr. E.D.Va.1995). The courts in both of those cases found that determining whether a claim is a § 507(a)(7) priority claim in a Chapter 13 case should involve consideration of § 523(a)(5) regarding dischargeability of spousal and child support obligations. *Doe*, 193 B.R. at 15; *Grady*, 180 B.R. at 464. The same suggestion is made in 3 L. King, Collier on Bankruptcy, P. 507.04[7] (15th ed.1995),

relied on by the *Doe* court.[3] This Court agrees that it is necessary to look at § 523(a)(5) for a fully informed and correct application of § 507(a)(7).

Under § 523(a)(5), debts owed for child support are nondischargeable. Prior to the addition of § 507(a)(7) to the Bankruptcy Act, many courts gave child support obligations preferential treatment in Chapter 13 cases because, since they were nondischargeable, they had to be paid in full under the Chapter 13 plan, and because family support enforcement is strongly favored by public policy.[4] Courts gave this preferential treatment despite § 1322(b)(1) which required that similarly situated creditors, i.e. unsecured nonpriority creditors, be treated the same. Courts found that child support obligations were different than other unsecured nonpriority claims because they pass the "fairness" test[5] for different classification. *Leser*, 939 F.2d at 671. Some courts focused on the facts that the claim was nondischargeable and/or other creditors were receiving at least as much as they would in a Chapter 7 liquidation. *Leser*, 939 F.2d 669; *Husted*, 142 B.R. at 74–75; *see also In re Groves*, 39 F.3d 212 (8th Cir.1994) (discussing this ratio-

**2.** The Bankruptcy Reform Act of 1994, Pub.L.No. 103–394, which incorporated this change, was enacted October 22, 1994, and was effective in cases filed after that date. Thus, it is applicable to the case at bar, filed December 19, 1995.

**3.** Collier states:

The language of this new priority [§ 507(a)(7)] follows the language of the exception from discharge for alimony, maintenance and support. Like section 523(a)(5), section 507(a)(7) excludes debts assigned to third parties.... The reported cases and commentary on section 523(a)(5) should be considered in applying sections 507(a)(7).

**4.** *See In re Leser*, 939 F.2d 669 (8th Cir.1991); *In re Bunn* 170 B.R. 670 (Bankr.D.Minn.1994) (holding a lift of stay should be granted if the plan did not provide preferential treatment to family support claims); *In re Brown*, 152 B.R. 232, 234 (Bankr.N.D.Ill.1993); *In re Husted*, 142 B.R. 72 (Bankr.W.D.N.Y.1992); *In re Whittaker*, 113 B.R. 531, 533–34 (Bankr.D.Minn.1990); *In re Storberg*, 94 B.R. 144 (Bankr.D.Minn.1988); *In re Davidson*, 72 B.R. 384 (Bankr.D.Colo.1987).

In *In re Brown*, the bankruptcy court had relied on cases regarding preferential classification of child support claims in an attempt to apply the

same rationale to student loan claims. In doing so, the Bankruptcy court correctly stated that "preferential classification of [family] support claims has been approved by nearly all of the recent opinions," and cited several cases as authority, including *Leser*. The Bankruptcy court in *Brown* was reversed, however, by the District Court, which held that the public policy and other reasons for allowing special treatment of family support obligations did not apply in student loan situations. *McCullough v. Brown*, 162 B.R. 506 (N.D.Ill.1993). Most jurisdictions agree that child support claims present a very unique situation and refuse to apply the rationale to give student loan claims preferential treatment. In any event, this Court agrees with the Bankruptcy Court in *Brown* that the recent cases still look with favor upon preferential treatment to child support claims.

**5.** The four part test involves the court's inquiring: (1) whether the discrimination has a rational basis; (2) whether the debtor can carry out a plan without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination. *Leser*, 939 F.2d at 671 (citations omitted).

nale and declining to apply it to student loans). In other words, although they were not listed as a priority debt, child support obligations were, in effect, treated as such because they were nondischargeable and because public policy mandates that they be given preferential treatment. The court in *In re Bunn*, 170 B.R. 670 (Bankr.D.Minn. 1994), when it ordered that child support be given preferential treatment, went so far as to hold that a lift of the stay should be granted pursuant to § 362(b)(2) if the plan does *not* provide favorable treatment of child support arrearages so that the creditor may pursue remedies outside the plan, stating that preferential treatment of child support is an indicia of good faith on the part of the debtor. *Id.* at 674. The court said:

> Public policy favors preferential treatment of child support debts in chapter 13 cases. Such treatment at a minimum entails separate classification of the child support debt. If a debtor does not propose a plan that separately classifies the child support arrearage, it may be inferred that the debtor proposed the plan in bad faith for the purpose of circumventing child support obligations. As such, the ex-spouse should be entitled to relief from the stay to collect the arrearage outside of the plan.

*Id.* at 675.[6]

The problem we face here is that now that child support obligations have been added to the list of priority debts, it is necessary to determine whether the application and effect of the two sections are the same, particularly, whether the exceptions provided under § 523(a)(5) for dischargeability still apply when dealing with the priority issue. This question is complicated by the fact that some of the language contained in § 523(a)(5) does not appear in § 507(a)(7).

 Section 507(a)(7) is nearly identical to § 523(a)(5), except that § 523(a)(5) provides two exceptions to the exception as to assignments, whereas § 507(a)(7) does not. Perti-

nent to the case at bar is § 523(a)(5)(A), which deals with assignments to government agencies. Section 523 provides, in relevant part:

### § 523. Exceptions to discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—
>
> > (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State)....

In other words, under § 523(a)(5)(A), if the debt for child support was assigned to a governmental unit it cannot be discharged in bankruptcy. *In re Donelson*, 153 B.R. 995, 996 (Bankr.W.D.Mo.1993). If, on the other hand, it was assigned to a non-governmental agency, it would be dischargeable. As the language excepting governmental assignees does not appear in § 507(a)(7), this Court must determine whether an assignment to a government agency affects the priority of a child support debt as it does the dischargeability of the debt.[7]

 Generally, Congress is presumed to act intentionally when it includes language in one section but omits it in another. *Estate of Bell v. C.I.R.*, 928 F.2d 901, 904 (9th Cir. 1991). However, it is also true that Con-

---

6. The *Bunn* court did qualify this holding by stating that courts should not indiscriminately grant a relief from stay to any child support claimant seeking relief from the automatic stay, noting that some of those claimants may fare better under the plan. *Bunn*, 170 B.R. at 674.

7. Neither *Doe* nor *Grady* dealt in particular with § 523(a)(5)(A), which is the exception at issue here. Rather, both *Doe* and *Grady* dealt with § 523(a)(5)(B), another exception to § 523(a)(5) which is not pertinent in this case.

gress is presumed not to have intended to enact meaningless legislation, *In re Hampton*, 142 B.R. 51, 52 (Bankr.D.Conn.1992), and "absent a clear manifestation to the contrary, a newly-enacted or revised statute is presumed to be harmonious with existing law and its judicial construction." *In re Vickers*, 116 B.R. 149, 154 (Bankr.W.D.Mo.1990) (*citing Johnson v. First Nat'l Bank of Montevideo*, 719 F.2d 270, 277 (8th Cir.1983)).

■ In the situation at bar, the omission of the exception to the exception from § 507(a)(7) is, in its effect, meaningless when it is read harmoniously with § 523(a)(5)(A) and the judicial interpretation of that section. Section 523(a)(5)(A) still mandates that claims for child support which were assigned to a government agency are nondischargeable. And as several courts (including the Eighth Circuit [8]) found prior to the addition of § 507(a)(7) to the Act, those claims are to be given preferential treatment in a Chapter 13 plan. If they are not, the automatic stay may be lifted as to the child support arrearages and the claimant may pursue other remedies. *Bunn*, 170 B.R. 670. Such a claim should not be classified with other general unsecured debts receiving only a percentage of the claim. As such, a debt for child support which has been assigned to a government agency should be treated as though it is a priority debt in a Chapter 13 plan: it should be paid in full.

■ That said, the Court turns to the case at bar. Debtor lists the creditor on the claim for child support arrearages as "Child Support Enforcement Unit, 1730 Prospect, Suite 101, Kansas City, MO 64106." As discussed, *supra*, there are two issues to be decided: (1)

was the claim for child support arrearages assigned, and (2) if so, was it assigned to a governmental agency?

In an attempt to determine whether the debt was assigned and whether the "Child Enforcement Unit" as listed on Debtor's schedules is a governmental agency thereby making the debt nondischargeable, this Court called the 800 number listed in the phone book for "Child Support Enforcement—CSE." The person at that number informed the Court that it was a private collection agency but that it had no office in Kansas City, much less at 1730 Prospect. So, the Court went to 1730 Prospect, Suite 101, in Kansas City, Missouri, and discovered that this was the office of the State of Missouri Department of Social Services, Division of Child Support Enforcement, not the "Child Enforcement Unit" as listed on Debtor's schedules.[9]

Based on this information, this Court finds the debt to be nondischargeable and priority for two reasons. First, the Court does not believe the debt was actually "assigned" as contemplated in the statute. Generally, the cases dealing with the issue of whether a claim for child support was assigned to a governmental agency under § 523(a)(5)(A) deal with assignments to agencies such as Aid to Families with Dependant Children (AFDC) [10] rather than to the Department of Social Services, Division of Child Support Enforcement, as is the case here.[11] Typically, in AFDC cases, the mother assigns her rights to past due or future child support payments due from the father in order to

---

**8.** *In re Leser*, 939 F.2d 669 (8th Cir.1991).

**9.** The Court mentions the fact that it called the phone number and went to the office located at 1730 Prospect in the interest of full disclosure to the parties, and points out that it did so because Debtor's schedules were not clear as to who the creditor was.

**10.** Mo.Rev.Stat. § 208.040 (1994).

**11.** *See In re Seibert*, 914 F.2d 102 (7th Cir.1990) (where mother had assigned her rights to support to AFDC and Department of Social Services for medical expenses associated with pregnancy, father's obligation to reimburse the agencies held

nondischargeable); *In re Browning*, 161 B.R. 841 (Bankr.E.D.Cal.1993) (where mother had assigned her rights to child support to county agency akin to AFDC in order to receive public assistance, father's obligation for child support held nondischargeable); *In re Donelson*, 153 B.R. 995 (Bankr.W.D.Mo.1993) (holding the assignment of debt to state for purposes of collecting AFDC did not make the debt for child support arrearages dischargeable); *In re Burton*, 132 B.R. 575 (Bankr.N.D.Ind.1988) (holding debtor's obligation to repay County department of public welfare for monies expended for debtor's child to be nondischargeable).

receive public assistance from the agency.[12] The theory is that the AFDC payments are made in lieu of the father's support, so when the mother does collect from the father, his payments should repay AFDC for the payments made in lieu of his.

This is not the situation in the case of the Department of Social Services, Division of Child Support Enforcement. The Division of Child Support Enforcement is established by Mo.Rev.Stat. § 454.400 (1994) "to administer the state plan for child support enforcement." Its duty is to "litigate or prosecute support actions," and it has certain powers including, *inter alia,* "[t]o administer, disburse, dispose of and account for funds … advanced to or appropriated by the state of Missouri" for the purpose of child support enforcement. The Division of Child Support Enforcement does not make payments to the mother in lieu of Debtor's payments. Rather, it is a government agency which attempts to assist in administering and enforcing the payment of child support. Unlike the case with AFDC, there is no statutory provision requiring the mother to assign her rights to child support to the agency. The debt is still owed to the mother but the payments are made through the agency, so no assignment has occurred. As a result, since the case at bar involves the Division of Child Support Enforcement (and not an agency such as AFDC), this Court does not believe the debt for child support arrearages was actually "assigned" as contemplated in the statute. The parties have certainly offered no evidence of an assignment.

█ However, even assuming, *arguendo,* that the claim was assigned as contemplated by the statutes, the claim must be considered nondischargeable under § 523(a)(5)(A) because the State of Missouri Department of Social Services, Division of Child Support Enforcement is clearly a state governmental office whose purpose is the enforcement of child support.[13] As a result, the debt for child support arrearages in the amount of $33,239.15 is nondischargeable and should be

paid in full under the plan, or the automatic stay may be lifted. § 362(b)(2)(B); *Bunn,* 170 B.R. 670.

█ It follows then, as discussed, *supra,* that the claim should be classified separately from the other general unsecured debts and should require payment in full over the life of the plan. As Debtor's child support obligation accounts for the majority of his general unsecured claims, the main benefit Debtor would receive from his Chapter 13 plan is the stay against enforcement of his child support obligation. Furthermore, Debtor has accumulated an arrearage of over $33,000 in child support. If the plan is approved as it is now presented, the result will be that Debtor's children will receive only a small percentage of what their father owes them, and at the completion of the plan (5 years hence), Debtor will be in a position nearly identical as the position he is now: he will still owe his children a large amount of money, and only a few thousand dollars in unsecured nonpriority debts will have been discharged.

This Court has the same concerns that the court in *Bunn* had, namely, that Debtor has filed bankruptcy to avoid the consequences of failing to pay his child support. As the *Bunn* court stated, "The Bankruptcy Code was never intended to create a sanctuary for the man who wished to avoid his legal and moral obligation to support his children." *Bunn* 170 B.R. at 674 (quoting the county's memorandum with favor). Congress has expressly recognized that the avoidance of child support obligations is not a valid purpose for filing bankruptcy, as evidenced by the fact that they are nondischargeable, § 523(a)(5); § 1328(a)(2), they are a priority debt, § 507(a)(7), and they are excepted from the automatic stay, § 362(b)(2). As the court in *In re Doe* expressed:

> [T]he legislative history of the Bankruptcy Reform Act of 1994 indicates the need for "greater protection for alimony, maintenance and support obligations owing to a spouse, former spouse, or child of a debtor in bankruptcy."

---

**12.** Mo.Rev.Stat. § 208.040.2(2) (1994).

**13.** Debtor even states in the space on the schedule marked, "Date Claim was Incurred and Consideration for Claim, If Claim is Subject to Setoff, So State," Debtor entered, "1980 child support arrearages *assigned to public agency.*" (Emphasis added).

**134**

193 B.R. at 16 (*citing* 140 Cong.Rec. H10752, H10770 (daily ed. Oct. 4, 1994) (statement of Chairman Brooks)). Finally, and quite apropos to the case at bar, the Eighth Circuit very recently declared:

> Although statutory exceptions to discharge normally are subject to narrow construction, exceptions from discharge for spousal and child support deserve a more liberal construction. The policy underlying section 523(a)(5) ... favors enforcement of familial support obligations over a "fresh start" for the debtor.

*In re Kline*, 65 F.3d 749, 750–51 (8th Cir. 1995) (citations omitted). The same would be true in the case of priority of family support obligations.

As Debtor's plan classifies the claim for child support arrearages as a general unsecured nonpriority debt and provides for only a percentage of the claim to be paid, the plan cannot be confirmed. *In re Donelson*, 153 B.R. at 996.

The foregoing Memorandum Order constitutes Findings of Fact and Conclusions of Law as required by Fed.R.Bankr.P. 7052.

So ORDERED.