### In re Raymond S. BURNS and Lisa M. LaVera, Debtors.

**Bankruptcy No. 96–15580–H13.**

United States Bankruptcy Court,
S.D. California,
San Diego Division.

March 10, 1998.

**946**

David L. Skelton, San Diego, CA, Chapter 13 Trustee.

Don E. Bokovoy, Michael Weintraub, San Diego, CA, for Debtors.

Scott N. Orona, San Diego, CA, for Chapter 13 Trustee.

## MEMORANDUM DECISION

LOUISE DeCARL ADLER, Chief Judge.

Raymond S. Burns and Lisa M. LaVera ("Debtors") oppose the Chapter 13 trustee's motion to modify their confirmed plan and have asked the Court instead to confirm their modified plan dated January 26, 1998. The Debtors' modified plan seeks to put the non-priority, unsecured portion of the support claim by the County of San Diego in a separate class, paying the claim in full while other unsecured creditors receive 0% on their unsecured claim. Because this Court believes that the facts urged here are not substantively different than those urged in the *In re Sperna,* 173 B.R. 654 (9th Cir. BAP 1994) and *In re Bernal,* 189 B.R. 507 (Bankr. S.D.Cal.1995) cases, the Court sustains the trustee's objection to confirmation of the Debtors' modified plan and instead confirms the trustee's modified plan.

## I. FACTS

Debtors filed their Chapter 13 petition in November 1996. Their Chapter 13 plan confirmed January 9, 1997 proposed payments of $350.00/month. Of this amount, $275.00/month was to be paid to the County of San Diego Bureau of Child Support as a priority claimant for approximately $13,000 in child support arrears. In addition certain taxes owed the I.R.S. were to be paid. Unsecured creditors were to receive no dividend on their claims. In their motion to modify, the Debtors argue the original plan was designed to pay the priority non-dischargeable tax debts and support claims in full and discharge the unsecured debt without payment of any kind. (*See,* Mem. in Support of Payment filed January 14, 1998 at 2:1–4.) Unfortunately for the Debtors, when the County filed its claim in March 1997, $246.95 was claimed as a priority and the balance of $17,428.52 as an unsecured debt.[1]

Upon determining that the Debtors' plan based on the filed claims would be completed in eleven months, pursuant to section 1329(a), the Chapter 13 trustee moved to modify the Debtors' confirmed plan to require a 30% dividend to unsecured creditors. Confirmation of this plan ("the Trustee's plan") would result in the Debtors continuing to make the $350.00/month payment for a full 36 months.

■ The Debtors countered with their own motion to modify, proposing a modified plan separately classifying the unsecured

---

1. The Debtors apparently underestimated the amount of accrued support plus interest.

claim owed to the County of San Diego Bureau of Child Support, paying that claim in full with interest but still paying nothing to other unsecured creditors. Although the record is unclear, by examining the proof of claim filed by the Bureau of Child Support Enforcement, and the Debtors' Memorandum in Support of Payment (at 3:6–19; 6:14–20) it appears that the Debtors are caught in the middle of inconsistent language in the Bankruptcy Code itself. Originally, section 523(a)(5) and section 507(a)(7) contained identical language. A support claim assigned to a governmental entity was both dischargeable [section 523(a)(5)] and was not entitled to priority in distribution [section 507(a)(7)(A)]. By virtue of a 1981 amendment to section 523(a)(5)(A) debts assigned to a governmental entity as a condition of AFDC eligibility became non-dischargeable. However, there was no corresponding change to section 507(a)(7)(A). *(See generally, Lawrence P. King,* 4 Collier on Bankruptcy ¶ 523.11[8] at 523–88–9.) Although some courts have assumed this was an oversight[2], this Court believes if Congress intended to accord priority status to assigned support debts, it has amended the Bankruptcy Code a sufficient number of times since 1981 to have made the appropriate change. Consequently, this Court agrees with the Debtors' implicit assumption that the assigned support claim is non-dischargeable but does not have priority in payment. It is this quandary which the Debtors use to bootstrap an argument for separate classification of the support claim.

## II. ISSUE

Should the Debtors be permitted to modify their Chapter 13 plan to separately classify and pay 100% of an assigned support claim?

## III. DISCUSSION

■ Well-settled Chapter 13 case law in this circuit permits confirmation of Chapter 13 plans which provide for different classification and treatment for different types of unsecured debt. *In re Wolff,* 22 B.R. 510 (9th Cir. BAP 1982). The *Wolff* decision set out a four-part test[3] to guide courts in determining whether a debtor might discriminate fairly under section 1322(b)(1).

■ *In re Sperna, supra,* stands for the proposition that mere non-dischargeability is not a reasonable basis for discrimination between classes of unsecured Chapter 13 debt. *Sperna* held:

> We agree with those courts that have held that the non-dischargeable nature of a student loan debt is not, by itself, a reasonable basis for discrimination [citations omitted].

\* \* \* \* \* \*

Certainly, one purpose of Chapter 13 is to enable a debtor to make a fresh start. [Citations omitted] However, there is nothing in the Code or case law that defines "fresh start" as the emergence from bankruptcy completely free of all debt. 173 B.R. at 658–9.

The Debtors' major argument is that they cannot carry out the plan without discrimination because "any other plan leaves them facing those problems as well as potential criminal charges and in addition, facing the stigma of a 'deadbeat dad', one who does not pay support." (Mem. in Support of Payment at 8:9–12.) The potential for criminal charges was, indeed, persuasive to the court in *In re Gonzales,* which permitted discrimination, holding:

> Under the facts of this case, this court finds the position and reasoning of those courts that permit the inclusion and separate classification of child support arrearage in a Chapter 13 plan to be more persuasive. Separate classification for child

---

**2.** *In re Grady,* 180 B.R. 461, 464 (Bankr.E.D.Va. 1995); *In re Beverly,* 196 B.R. 128, 132 (Bankr. W.D.Mo.1996) and *In re Camacho,* 211 B.R. 744, 746 fn. 2 (Bankr.D.Nev.1997).

**3.** Under this test, the court must determine, "(1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without discrimination; (3) whether the discrim-

ination is proposed in good faith; and, (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination. Restating the last element, does the basis for the discrimination demand this degree of differential treatment be imposed?" *Wolff, supra,* 22 B.R. at 512.

support is not unfair in light of the non-dischargeability of child support, society's strong interest in having child support paid in full, and a debtor's need to start fresh upon completion of the plan. *See In re Bugna,* 33 F.3d 1054, 1059 (9th Cir.1994)

172 B.R. 320, 327 (E.D.Wash.1994)

The Court views as praiseworthy the Debtors' new-found desire to recognize their responsibility to pay support claims.[4] However, assigned child support is not the only type of debt which is not accorded priority under Chapter 13 and yet has the potential of incarceration for nonpayment.˙ Specifically section 1328(a)(3) provides that debts for criminal fines survive a Chapter 13 discharge. There is absolutely no priority afforded such debts under section 507. Indeed, under section 726(a)(4) such debts are accorded a status behind other unsecured debts. To the extent such debts arise as a result of the debtor's conviction of a crime, clearly nonpayment could result in further criminal action. Yet this Court is unaware of any case which permits the separate and more favorable treatment of a debt for fines on the theory that failure to make such payments might result in the debtor's incarceration and an inability to perform the plan. In fact, the only case which recently considered this issue denied confirmation of a plan providing for more favorable treatment of such a debt even where incarceration was imminent. *In re Veasley,* 204 B.R. 24 (Bankr.E.D.Ark. 1996).

As observed by my colleague Judge Lisa Hill Fenning in *In re Warner:*

Nothing in the Code entitles non-dischargeable child support claims to any priority over other unsecured claims. Non-dischargeability does not guarantee repayment in full, but rather establishes the continuing liability of the debtors for repayment of any deficiencies remaining after discharge and the ratable distribution

**4.** The proof of claim filed by the Bureau of Child Support Enforcement reveals that although the obligation accrued between 06/91–08/96, the Debtors only started making regular and substantial payments in mid–1995. An examination

to all creditors from the available assets of the estate.

115 B.R. 233, 239 (Bankr.C.D.Cal.1989).

## IV. CONCLUSION

 It appears the *Wolff* factors are expressed in the conjunctive—that is, a debtor proposing a discriminatory plan must satisfy each of them. Since the Debtors have not convinced the Court that the plan cannot be carried out without discrimination, the Debtors' modified plan must be denied confirmation. However, the Chapter 13 trustee's modified plan dated October 3, 1997 will be confirmed. The Chapter 13 trustee is directed to submit an order denying confirmation of the Debtors' modified plan and confirming his own.

of the Debtors' Statement of Affairs discloses that in 1994 the joint debtors earned $45,000 in income from employment—an amount which suggests that regular support payments could have begun earlier.