### In re Michael W. BLACKSTONE and Amy S. Blackstone, Debtors.

#### No. 01–20290.

United States Bankruptcy Court, D. Idaho.

Sept. 12, 2001.

▮▮▮

---

Cameron L. Phillips, Appleton Phillips, Michael W. Blackstone, Coeur d'Alene, ID, for debtors.

C. Barry Zimmerman, Coeur d'Alene, ID, trustee.

## MEMORANDUM OF DECISION

TERRY L. MYERS, Bankruptcy Judge.

### BACKGROUND

Michael W. Blackstone and Amy S. Blackstone ("Debtors") filed a voluntary petition for chapter 13 relief on March 9, 2001. On their schedule E (creditors holding unsecured priority claims), they listed an obligation to the Office of the District Attorney, Orange County, California, for child support in the amount of $41,107.48. This listing did not reflect that the Debtors believed the debt to be contingent, unliquidated or disputed.

In their chapter 13 plan filed on March 9, Debtors proposed in paragraph 4(a)(3):

(3) **Maintenance/Child Support.** Unless the holder of the claim agrees otherwise, upon confirmation of the plan and the filing of an allowed claim, any allowed unsecured claims of a spouse, former spouse, or child of debtors, for delinquent maintenance or child support shall be paid outside the plan.

Though Orange County is not mentioned here by name, no other provision of the

plan appears to address this obligation to the County. The schedules do not list any other support obligation.

On May 14, 2001, well before the applicable claim bar date, Orange County filed a proof of claim, Claim No. 6, for a § 507(a)(7) priority obligation in the amount of $41,253.01.

An amended plan and amended schedules were filed on May 22 but the same did not change the scheduling or the proposed treatment of Orange County's claim.[1]

On June 14 Debtors filed an objection to Claim No. 6, alleging:

> The basis for this objection is that debtor's wages were garnished by two counties at one time to pay his child support arrearage, and an accurate accounting of those funds has not been provided to debtor Michael W. Blackstone.

A written "Opposition to Objection to Proof of Claim" (the "Opposition") was filed by Orange County on July 10. *See* Docket No. 19. It essentially asserts that the calculation of unpaid support, accrued interest and credit for payments made, as appended to the Opposition and to the proof of claim, is correct. *Id.*, at p. 2, ¶ 3. The Opposition also contends that there were not simultaneous collections by both San Joaquin County and Orange County, alleging that San Joaquin ceased collection in May of 1993, and Orange County commenced collection that same month. *Id.*, at p. 2, ¶ 4.

An amended objection to claim was filed on July 10, adding the following assertion:

> Debtor Michael Blackstone's wages were garnished by two counties at once to pay child support arrearage, *and the actual amount due is $14,335.89.*

*See* Doc. No. 20, at p. 2 (emphasis supplied).

On July 24 the Court considered the question of confirmation of Debtors' plan at a duly scheduled and noticed hearing. Though there had been no objection to confirmation filed, by Orange County or any other creditor, the existence of the unresolved objection to Claim No. 6 was noted by Trustee and Debtors as an impediment to confirmation.

Debtors thereafter issued a "Notice of Hearing on Objection to Claim" (the "Notice") on July 26, Doc. No. 22. The Notice advised Orange County that the Debtors' amended objection to claim and any responses filed by the creditor would be brought on for evidentiary hearing on August 23, 2001. It further stated:

> The court will, at that time and place, proceed with the taking of testimony and the reception of evidence relative to the claim of this creditor, and both parties are directed to appear, with their counsel, prepared to proceed, and in the event of a failure to so appear, the court may act on the basis of the contents of the court's file in this matter, without further hearing.

On August 23, the Court called the matter and Debtor, Michael Blackstone appeared with counsel. No appearance was made by Orange County. Debtors offered documentary Exhibits 1 through 7 in support of the objection, which exhibits were

---

1. Debtors' original schedule I indicated that $828.00 had been deducted monthly in payment of child support obligations. It indicated also Debtors' employment in the north Idaho area. Amended schedule I filed May 22, 2001 indicated Mr. Blackstone had become employed in Livermore, California.

The § 341 meeting minutes reflected a change in Debtors' residence to Escalon, California. Amended schedule I also indicates that payments on back child support of $260.00 per month were stopped temporarily, and would resume after bankruptcy discharge.

admitted. Exhibit No. 7 is a three-ring binder which itself contains numerous documents. The binder also contains what is essentially a testimonial affidavit of Mr. Blackstone explaining the facts surrounding his child support obligations arising and collected in California.

The Court took the matter under advisement to evaluate the record. This Decision constitutes the Court's findings of fact and conclusions of law on the contested matter. Fed.R.Bankr.P. 9014, 7052.

**Applicable standards and burdens on objection to claim**

*Lundell v. Anchor Construction Specialists, Inc.,* 223 F.3d 1035 (9th Cir. 2000), recently addressed the burdens placed on litigants following the filing of a proof of claim and the assertion of an objection to that claim:

A proof of claim is deemed allowed unless a party in interest objects under 11 U.S.C. § 502(a) and constitutes *"prima facie* evidence of the validity and the amount of the claim" pursuant to Bankruptcy Rule 3001(f). *See also* Fed. R.Bankr.P. 3007. The filing of an objection to a proof of claim "creates a dispute which is a contested matter" within the meaning of Bankruptcy Rule 9014 and must be resolved after notice and opportunity for hearing upon a motion for relief. *See* Adv.Comm. Notes to Fed.R.Bankr.P. 9014.

Upon objection, the proof of claim provides "some evidence as to its validity and amount" and is "strong enough to carry over a mere formal objection without more." *Wright v. Holm (In re Holm),* 931 F.2d 620, 623 (9th Cir.1991) (quoting 3 L. King, Collier on Bankruptcy § 502.2, at 502–22 (15th ed.1991)); *see also Ashford v. Consolidated Pioneer Mort. (In re Consol. Pioneer Mort.),* 178 B.R. 222, 226 (9th Cir. BAP 1995), *aff'd,* 91 F.3d 151, 1996 WL 393533 (9th Cir.1996).

To defeat the claim, the objector must come forward with sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *In re Holm,* 931 F.2d at 623.

. . .

"If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by the preponderance of the evidence." *In re Consol. Pioneer,* 178 B.R. at 226 (quoting *In re Allegheny Int'l, Inc.,* 954 F.2d 167, 173–74 (3d Cir.1992)). The ultimate burden of persuasion remains at all times upon the claimant. *In re Holm,* 931 F.2d at 623.

223 F.3d at 1039.

It is upon this platform that the contentions of Debtors and Orange County, as set forth in Claim No. 6, the Objection and Amended Objection, the Opposition, and in the exhibits presented at hearing, must be determined.

**DISCUSSION AND DISPOSITION**

**The evidence and record**

Having reviewed the exhibits, the Court must agree with Debtors' observation that California's process of collection of child support, at least in this case, has often been confusing, at times unintelligible and, to Debtors, quite frustrating. According to this evidence, the California authorities have been generally resistant to providing Mr. Blackstone with clarity as to their position on several issues including the calculation of the amount of the outstanding obligation, and loathe to discuss the matter with Mr. Blackstone in a detailed, objective manner notwithstanding his at-

tempts to do so. The position of the California authorities, as manifested by this evidence, seems to be one of "if our computers say it so, then it must be so."

It might also be observed that the evidence indicates this is not a situation where the Debtor has attempted to evade or hide from the authorities or to ignore his obligation to pay child support. To the contrary, he appears to have kept the California authorities informed of his location and employment and actually encouraged collection of child support to the extent his income allowed.

However, the matter before the Court is not a cause of action to sanction or recover some sort of damages from Orange County for its treatment of Mr. Blackstone or to compensate him for his frustration. Rather, the issue is simply one of determining the appropriate amount of the accrued child support obligation under the evidence of record. Thus it appears to the Court that the extended history of this Debtor's interactions with the California authorities is relevant or probative only to a limited degree. The Court will consider that uncontradicted history in the context of considering the weight which should be given the rather unequivocal conclusion of Orange County that the accounting, as set forth in its Opposition, is accurate. The Court will also consider specific factual assertions contained in Debtors' submissions and documents as they impact the question of the calculation of the debt.

Exhibit 5 is Debtors' spreadsheet showing their calculation of the child support owed under the various orders of the California courts, the accrual of interest thereon, and the payments which had been made either voluntarily or through garnishment. According to Debtors, at the time of bankruptcy the total owed was $28,768.08. *Id.*

Most of the difference between this figure and the claim of Orange County [2] can be traced to the asserted charges from May, 1993 through December, 1994. Orange County contends the "current obligation" during that period was $1,000.00 per month until October, 1994 when it dropped to $935.00. The County then shows the current obligation at $636.00 per month from December 1994 through March 1997. The County also reflects no payments during 1994 with the exception of a few small payments totaling $276.00 in August, October and December of that year. Thus the County arrives at an outstanding "principal and interest (assigned)" balance as of December, 1994 of $20,808.58. *See* Exhibit 6.[3]

Debtors' spreadsheet, Exhibit 5, shows not only a lower monthly obligation during 1993 and 1994 (of $701.00 per month) but payments in sporadic amounts totaling $2,458.76. This total includes payments made by garnishments by San Joaquin County. *Id.* By the middle of 1994, only a bi-weekly garnishment of $46.00 was in effect (though Debtors' Exhibit 5 shows more of those payments than the County's spreadsheets.) The upshot is that Debtors believe the outstanding amount of principal and accrued interest was $12,955.63 as of December 1994. Much if not all of the difference between the parties as to the

---

**2.** Exhibit 6 is a spreadsheet reflecting the County's calculation of the obligation through June 2001. A similar spreadsheet reflecting the calculation through May 2001 was attached to Claim No. 6. The $41,253.01 amount shown on the proof of claim can be reached by adding figures in the categories or

columns entitled "principal and interest (assigned)" and "principal and interest (unassigned)" as of March 2001, which was the month of bankruptcy filing.

**3.** No "principal and interest (unassigned)" obligation is shown until April 1997.

amount owed at bankruptcy in March 2001 is derivative of these earlier balances.

The documents entered into evidence by Debtors, and those attached to Claim No. 6, establish that child support was indeed in the original amount of $701.00 per month. Spousal support was initially $299.00 per month. The combination of the two is apparently the genesis of the $1,000.00 per month figure used by Orange County.

In October, 1994 the child support amount was reduced to a current obligation of $636.00 per month. *See* Exhibits 2, .7. This reduction was apparently incorporated by the California authorities in their analyses of the obligation, though a couple of months later. *See, e.g.,* Exhibit 6.[4]

In 1999, Mr. Blackstone and his former spouse entered into a stipulation to terminate all spousal support arrearage and interest thereon. *See* Exhibit 4.[5] Under this stipulation, the spousal support and interest [6] was waived in full by Mr. Blackstone's ex-wife, whose signature allegedly appears on Exhibit 4. The agreement appears supported by consideration in that certain obligations owed to Mr. Blackstone by his ex-spouse (as represented by a small claims judgment) were also deemed satisfied.[7]

## Application of burdens to the evidence

■ As stated in *Lundell:*

To go forward, Lundell was required at trial to produce evidence sufficient to negate the *prima facie* validity of the filed claim. "In practice, the objector must produce evidence *which, if believed,* would refute at least one of the allegations that is essential to the claim's legal sufficiency." *In re Allegheny Int'l, Inc.,* 954 F.2d 167, 173–74 (3d Cir.1992) (emphasis added); *In re Holm,* 931 F.2d at 623.

223 F.3d at 1040.

■ Debtors' assertions as to the elimination of spousal support, and as to the creditors' receipt of additional payments and/or garnishments in 1993 and 1994 which are not reflected in the Orange County's accounting, are not inherently untrustworthy or incredible. Thus, as the objectors have produced evidence sufficient to negate the facts set out in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. Ad-

---

4. While Exhibit 3 does bear a December 1994 date, an Order attached to the Opposition with an October 4, 1994 date reflects the $636.00 figure, consistent with Debtors' contentions.

5. While this stipulation, Exhibit 4, is not executed by Mr. Blackstone, nor is the incorporated order executed by a judge of the state court, Debtors' represented at hearing that the order was duly entered. Debtors also assert in Exhibit 7 that the document was also routed through the Orange County District Attorney's Office before being signed by the court.

6. This amount was calculated by the parties as $5,681.00, representing 19 months at $299.00 per month plus interest at 10% on the unpaid obligation. *Id.,* at p. 2.

7. Debtors argue that spousal support was "suspended" in March, 1994. *See* Exhibits 1 and 7. Though Debtors' Exhibit 7 refers to an internal "Exhibit L" relating to this issue, such exhibit is missing from the binder submitted. However, the Opposition contains an order bearing date of March 4, 1994, signed by counsel for the former Mrs. Blackstone, reflecting "suspension" of spousal support until November 30, 1994 on which date it would terminate. The stipulation, Exhibit 4, also includes the statement that "[o]n November 30, 1994, the issue of spousal support was terminated[.]" Because the retroactive elimination of spousal support arrearage under the stipulation has not been contested, Debtors' Exhibit 5 will control. Thus, the allegedly erroneous inclusion in Exhibit 6 of spousal support during this "suspension" is rendered immaterial.

ditionally, the ultimate burden of persuasion remains at all times upon the claimant. *Id.* Neither burden was met here by Orange County.

The Court therefore finds and concludes that the outstanding amount of the prepetition child support obligation owed, inclusive of principal and accrued interest, is $28,768.08 as per Exhibit 5.

**Additional reductions**

 Debtors contend that this amount should be further reduced. First, it is argued that no interest should be accrued. Debtors predicate this argument on the allegation that Idaho child support enforcement authorities would not have charged interest under similar circumstances. This proposition was not proven by the objectors. However, even if established, the policy approaches of Idaho child support enforcement authorities would not appear to be binding upon California authorities. Debtors have presented nothing to indicate that, as a matter of California policy, regulation, statute or other law, interest would not accrue on unsatisfied child support obligations. Indeed, even portions of Debtors' own submissions reflect to the contrary. *See, e.g.,* Exhibit 5 which reflects that a tax refund in 1998 was recovered by Orange County "and applied to interest by law." *See also, United States v. Gill,* 264 F.3d 929 (9th Cir.2001) (recognizing that applicable state (*i.e.,* California) law mandated accrual of interest on delinquent child support obligations).[8]

The second aspect of Debtors' argument is that the payments which were in fact made, voluntarily or through garnishment, should be applied to principal rather than interest thus further reducing the obli-

gation as of bankruptcy. This might be logical enough were the Court to decide that no interest should be accrued on the obligation. In such an event, the only place to apply the payments would be directly against the principal. However, the Court has hereinabove rejected the abatement of interest arguments.

In both these regards, the Court has not been persuaded that the objecting party has produced sufficient evidence or legal authority to negate the propriety of interest accrual on the unpaid child support obligations. However, insofar as the calculation of the amount of that accrued interest, the Court has adopted, by virtue of the foregoing findings and conclusions, Debtors' calculations in Exhibit 5.

**A related question of plan treatment**

 Debtors' Objection and Amended Objection do not take issue with Orange County's assertion of a § 507(a)(7) priority status. In fact, Debtors listed Orange County as a priority unsecured creditor on their schedule E. Thus, in resolving the outstanding objection to claim, the amount of the obligation will be adjusted but it will still be allowed, at this time, as a priority claim.

However, the use of the terms "assigned" and "unassigned" in the County's documentation, as well as certain references in Debtors' Exhibits to the fact that Mr. Blackstone's ex-wife obtained welfare benefits from the County, give rise to a question as to the accuracy of the characterization of this debt as priority.

Prior to the 1994 amendments to the Bankruptcy Code, chapter 13's treatment of prepetition support debts was somewhat problematic. While the same were nondis-

---

8. Debtors also seem to advance the argument that all interest should be abated as a sanction for the manner in which the County dealt with this obligation (*i.e.,* undergarnishing, double garnishing, calculation errors, refusal to communicate, and so on.) No authority was provided, however, to support this sort of approach.

chargeable under § 1328, which incorporated § 523(a)(5) by reference, those obligations were not given priority. This changed with amended § 507(a)(7) in 1994. That section now provides:

(a) The following expenses and claims have priority in the following order:

. . .

(7) Seventh, allowed claims for debts to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that such debt—

(A) is assigned to another entity, voluntarily, by operation of law, or otherwise; or

(B) includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature. of alimony, maintenance or support.

■ Because § 1322(a)(2) requires priority obligations to be paid in full under the plan, accrued support obligations qualifying under § 507(a)(7) must receive this treatment before the plan can be confirmed. *See, In re Baron,* 00.1 I.B.C.R. 22, 23–24 (Bankr.D.Idaho 2000); *In re Jacobson,* 231 B.R. 763, 765–66 (Bankr. D.Ariz.1999).

However, the language of § 507(a)(7) and § 523(a)(5) is, though quite similar, not identical. The dischargeability provision provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (*other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State* ); or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support[.]

Section 523(a)(5) (emphasis supplied).

*In re Parker,* 1999 WL 1116825 (Bankr. N.D.Ill.1999) at *2, notes that this "exception within an exception" results in a situation where *no* assigned support claims are entitled to priority, and *only* those assigned support claims held by a governmental entity remain nondischargeable. Originally held (*i.e.,* unassigned) support claims are both priority claims *and* nondischargeable.[9]

---

9. *Accord,* 4 L. King, Collier on Bankruptcy, ¶ 507.09[2], at 507–54 (15th ed. rev.2001) ("The result is that if a claim for alimony, maintenance, or support has been assigned to a private party, it is subject to discharge. If it has been assigned to a governmental agency, it is excepted from discharge. If it has been assigned to either a private party or a govern-

As *Parker* notes, other approaches to this statutory structure have been advanced, with some courts viewing the same as a "legislative gaffe" and simply deeming a child support claim assigned to a governmental entity to be a priority claim as well as nondischargeable, despite the absence of clear indication in § 507(a)(7) that priority status is conferred. *Id.*, at *2–*3, discussing (and rejecting) *In re Beverly*, 196 B.R. 128 (Bankr.W.D.Mo.1996).[10]

In this Court's view, the better approach is to recognize that such assigned debts held by governmental entities, though clearly nondischargeable by virtue of § 523(a)(5)(A), are not entitled to priority treatment. *See In re Burns*, 216 B.R. 945, 947 (Bankr.S.D.Cal.1998). This respects the language actually used by Congress in these two provisions. *See Gardenhire v. United States (In re Gardenhire)*, 209 F.3d 1145, 1148 (9th Cir.2000) (close adherence to the text of statutory provisions and rules is especially appropriate in a highly statutory area such as bankruptcy, and text-based arguments possess considerable force). This is also the result reached by Collier.[11]

Thus, delinquent support obligations which were *assigned* to Orange County would be nondischargeable in chapter 13 under § 1328(a)(2) and § 523(a)(5)(A), but not entitled to treatment as priority claims under § 507(a)(7) and § 1332(a)(2). To the extent that the claim was not assigned, and if the County simply acts as a collecting agency for the benefit of the ex-spouse or children, priority treatment would appear proper. *Accord, In re Maiten*, 225 B.R. 246, 248 (Bankr.M.D.Fla.1998).

The Court makes no final determination on this issue at this time, as it has not been addressed by the parties, and a clear conclusion cannot be drawn from the documents in evidence. In the event such an issue exists, *i.e.*, if some of the debt is an assigned nonpriority claim, it is conceivable that Debtors would urge confirmation of a plan that provides for the County's unassigned claim as a priority while providing treatment of any nonpriority, nondischargeable "assigned" claim as a classified unsecured claim under § 1322(b)(1). *In re Arce*, 1994 WL 673776, 94 I.B.C.R. 236 (Bankr.D.Idaho 1994); *see also, In re Bird*, 1994 WL 738644, 95 I.B.C.R. 39 (Bankr.D.Idaho 1995).[12] The Court con-

---

mental agency, it will not be eligible for the seventh priority.")

**10.** *In re Camacho*, 211 B.R. 744, 746, n. 2 (Bankr.D.Nev.1997) reached the same conclusion as *Beverly*.

**11.** Section 523(a)(5)(A) was amended in 1981 and 1984 providing the current form of the "exception to the exception" which makes support debts assigned governmental entities nondischargeable. *See*, 4 L. King, Collier on Bankruptcy, ¶ 523.11[8] at 523–89(15th ed. rev.2001). The priority provision of § 507(a)(7) was later added in 1994. *Id.*, ¶ 507.09, at 507–52.1. The treatise states:

The reason for the difference between treatment of assigned claims in the discharge and priority sections dealing with

alimony, maintenance, and support is not revealed in the legislative history. It must be assumed, in the absence of evidence to the contrary, that the exclusion of governmental agencies [in § 507(a)(7) ] was deliberate and that Congress intended that the exception in section 507(a)(7) for assigned claims be itself subject to no exceptions. *Id.*, ¶ 507.09[2], at 507–54.

**12.** In this regard, the Court would part company with *Burns*, which rejected such an attempt at separate classification of a nonpriority support debt. 216 B.R. at 947–48. Allowing debtors an opportunity to persuade the Court that, under the specific facts of a given case and proposed plan, the disparate treatment meets the standards of § 1322(b)(1), as discussed in *Arce, Bird* and other cases, appears preferable.

cludes that Debtors should be afforded the opportunity to propose an amended plan if they need or wish to do so.

**CONCLUSION**

Based upon the foregoing, Debtors' Objection and Amended Objection to Claim shall be sustained in part. The claim of Orange County, Claim No. 6, shall be set at the amount of $28,768.08 as of the date of bankruptcy. Such claim is, at this time, allowed as a priority unsecured claim pursuant to § 507(a)(7) of the Code.

Debtors will be provided a period of twenty (20) days from the date of this Decision within which to amend their Plan and notice the same for confirmation hearing. Counsel for Debtors shall also provide a form of order consistent with this Decision for entry by the Court.