**In re Yolanda GRAY, Debtor.**

**No. 98–06160–BGC–13.**

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

Sept. 14, 2001.

Edward Fawwal, Bessemer, AL, for debtor.

DeeAnn Truelove, Assistant District Attorney, for Greene County.

David P. Rogers, Jr., Birmingham, AL, Chapter 13 Trustee.

### Order on Trustee's Objections to Claims Nos. 7 and 10

BENJAMIN COHEN, Bankruptcy Judge.

### I. Background Facts

The debtor Yolanda Gray is the mother of four minor children for whom she has been ordered to make monthly child support payments. Three of those children are the subject of an order of the Juvenile Court of Greene County, Alabama, entered February 27, 1998. That order, (attached to claim number 7 filed on February 26, 2001), requires the debtor to make monthly payments to Barbara L. Gray, the grandmother and custodial party of those three children. The fourth child is the subject of an order entered by the same court on August 12, 1999. That order, (attached to claim number 10 filed on June 18, 2001), requires the debtor to make similar payments to Essie M. Byrd.[1]

Yolanda Gray filed the pending Chapter 13 case on September 18, 1998. On February 26, 2001, the Department of Human Resources for Greene County, Alabama filed claim number 7 on behalf of the State of Alabama and Barbara Gray, for $1,735.98. The Chapter 13 trustee objected to the status of that claim on March 2, 2001; however, the parties do agree: (1) that claim number 7 represents the debtor's pre-petition, child support arrears; (2) that $154.45 of the $1,735.98 represents the amount of assistance the State of Alabama paid Barbara Gray in Aid For Dependant Children benefits; and (3) that the remaining $1,581.53 of claim number 7 is owed directly to Barbara Gray as child support arrears.

On June 18, 2001, the County filed claim number 10 on behalf of the State and Essie Byrd for $1,595.03. The trustee objected to that claim on June 27, 2001. The parties did not provide the Court with the breakdown of that claim; however, for purposes of this order, the Court assumes it is similar to claim number 7.

The specific matters before the Court are the *Trustee's Objection to Claim 7* and

---

1. Ms. Byrd's relationship to that child or the debtor was not provided to the Court.

the *Trustee's Objection to Claim* 10. In both objections the Chapter 13 trustee contends that both claims, although filed as priority claims, should be paid as general unsecured claims. The State contends that both should be paid as priority claims.

Because neither dischargeability nor liability is at issue, neither the debtor nor the support payment recipients are parties before the Court.[2] The Chapter 13 trustee alone opposes the status of the claims.

A hearing on the trustee's objection to claim number 7 was held on April 9, 2001. Bill Ramsey for Ed Fawwal, the attorney for the debtor, and Charles King, the Assistant Chapter 13 Trustee, appeared. The hearing was continued to May 7, 2001, and then to June 4, 2001.

At the hearing on June 4, 2001, Mr. Ramsey; Sims Crawford, the attorney for the Chapter 13 Trustee; and Melanie Hinson, the attorney for Greene County DHR, appeared. The parties agreed that the facts were not disputed and agreed to file a stipulation of facts by July 9, 2001, after which the matter would be taken under advisement by the Court.

In the interim on June 27, 2001, the trustee filed his objection to claim number 10. A hearing on that objection was held on July 30, 2001. Mr. Fawwal and Mr. Crawford appeared. At the hearing, the Court asked Mr. Crawford to contact Ms. Hinson to determine whether claims 7 and 10 were separate debts. On July 31, 2001, Mr. Crawford contacted the Court and represented that he had spoken with Ms. Hinson and that the claims are indeed separate debts.

## II. Contentions

The state contends that both claims should be paid entirely as priority claims.

The Chapter 13 trustee contends that both should be paid entirely as general unsecured claims.

## III. Additional Facts

The parties' *Stipulation of Facts* in regard to claim number 7 reads:

COMES NOW David P. Rogers, Jr., Standing Chapter 13 Trustee, and State of Alabama, ex rel, Barbara Gray, by and through its attorney, Melanie G. Hinson, Assistant District Attorney, 17th Judicial Circuit, and respectfully stipulate to the following facts:

1. Barbara Gray is the Grandmother and custodial party for three children of the Debtor, Yolanda Gray, namely:

ALG DOB 5/03/87, age 14
DKG DOB 7/04/90, age 11
MSG DOB 1/27/92, age 9

2. The children have resided with Barbara Gray, their Grandmother, continuously since at least April, 1995.

3. In April, 1995, Barbara Gray applied for and was awarded Aid to Families with Dependent children (AFDC) through the Greene County Department of Human Resources. A copy of an Affirmation and Agreement signed by Barbara Gray and Wanda Hawkins, DHR Case Worker, is attached hereto.

4. In February, 1998, an Order of Support was entered by the Juvenile Court of Greene County, Alabama, against Yolanda Gray ordering Yolanda Gray to pay child support in the amount of $114.00 per month beginning April 1, 1998. (Copy of Order of Support attached.)

5. On September 1, 1999, Barbara Gray's AFDC case was closed and she stopped receiving AFDC benefits.

**2.** The debtor's attorney participated in the hearings on these matter but the debtor is not a formal party.

6. Even though Barbara Gray no longer received AFDC benefits through Greene County DHR, Greene County DHR continued child support collection efforts on behalf of Barbara Gray as provided under title IV–D of the Social Security Act.

7. As of January 30, 2001, date Proof of Claim was filed in this case by Greene County DHR, past-due child support owed by Yolanda Gray in this case totaled $1,735.98; $154.45 was owed to the State of Alabama as interest and reimbursement of AFDC benefits paid to Barbara Gray and $1,581.53 was owed to Barbara Gray in child support and interest due from Yolanda Gray.

8. Greene County DHR filed the Proof of Claim on behalf of Barbara Gray in the amount of $1,735.98 as an "Unsecured Priority Claim" to receive priority payments through the Chapter 13 Trustee's Office.

9. The Chapter 13 Trustee objected to the claim and such objection stated: "this claim is not a priority claim and should be allowed as a general unsecured claim."

Dated this 6th day of July, 2001.

*Stipulation of Facts,* filed July 9, 2001, Proceeding number 43.

### IV. Issue

The issue is: Should claims 7 and 10 be paid as priority claims or general unsecured claims?

### V. Conclusions of Law

The Court finds, pursuant to section 507(a)(7)(A) of the Bankruptcy Code and section 38–10–4 of the Code of Alabama, that a part of each claim should be paid as a priority claim and that a part of each should be paid as a general unsecured claim.

### A. Bankruptcy Law

#### 1. Section 507(a)(7)(A)

Section 507(a)(7)(A) reads:

(a) The following expenses and claims have priority in the following order:

(7) Seventh, allowed claims for debts to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, **but *not to the extent* that such debt—**

**(A) is assigned to another entity, voluntarily, by operation of law, or otherwise;** or

(B) includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support.

11 U.S.C. § 507(a)(7) (emphasis added).[3]

#### 2. Statutory Interpretation

Notwithstanding the plain language of section 507(a)(7)(A), because of the recognized disagreements among bankruptcy courts on the meaning of that language, especially in regard to assignments of child support claims to governmental entities, this Court must first consider whether it may rely solely on that plain language or

---

**3.** While the debtor-creditor relationships here are atypical, at least in the bankruptcy context, the debts in dispute are nonetheless captured by section 507(a)(7). At a minimum, each debt is, as required by section 507(a)(7)(A), a claim for a debt to a child of the debtor, for maintenance or support of such child in connection with an order of a court of record, in accordance with State law.

whether something else must be considered. There are two principal positions on this question.

Courts that do not believe that the plain language controls, believe that any resolution of a section 507(a)(7)(A) dispute and any interpretation of the meaning of section 507(a)(7)(A) must include a comparison of the language of that section to the language of section 523(a)(5), (regarding dischargeability of child support payments). Those courts conclude that if such a comparison is made, that the language of section 507(a)(7)(A) must conform to the language of section 523(a)(5) in favor of priority status for child support claims assigned to a governmental entity.

In contrast, those courts that believe that the language of section 507(a)(7)(A) is not ambiguous, conclude that the plain language controls. That conclusion results in non-priority status for claims assigned to governmental entities.

The opinion in *In re Beverly*, 196 B.R. 128 (Bankr.W.D.Mo.1996) is representative of the "section 523" position. That opinion reads in part:

> Section 507(a)(7) is nearly identical to § 523(a)(5), except that § 523(a)(5) provides two exceptions to the exception as to assignments, whereas § 507(a)(7) does not. Pertinent to the case at bar is § 523(a)(5)(A), which deals with assignments to government agencies. Section 523 provides, in relevant part:
>
> § 523. Exceptions to discharge
>
> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—
>
> (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State) . . . .
>
> In other words, under § 523(a)(5)(A), if the debt for child support was assigned to a governmental unit it cannot be discharged in bankruptcy. *In re Donelson*, 153 B.R. 995, 996 (Bankr. W.D.Mo.1993). If, on the other hand, it was assigned to a non-governmental agency, it would be dischargeable. As the language excepting governmental assignees does not appear in § 507(a)(7), this Court must determine whether an assignment to a government agency affects the priority of a child support debt as it does the dischargeability of the debt.
>
> Generally, Congress is presumed to act intentionally when it includes language in one section but omits it in another. *Estate of Bell v. C.I.R.*, 928 F.2d 901, 904 (9th Cir.1991). However, it is also true that Congress is presumed not to have intended to enact meaningless legislation, *In re Hampton*, 142 B.R. 51, 52 (Bankr.D.Conn.1992), and "absent a clear manifestation to the contrary, a newly-enacted or revised statute is presumed to be harmonious with existing law and its judicial construction." *In re Vickers*, 116 B.R. 149, 154 (Bankr. W.D.Mo.1990) (citing *Johnson v. First Nat'l Bank of Montevideo*, 719 F.2d 270, 277 (8th Cir.1983)).

In the situation at bar, the omission of the exception to the exception from § 507(a)(7) is, in its effect, meaningless when it is read harmoniously with § 523(a)(5)(A) and the judicial interpretation of that section. Section 523(a)(5)(A) still mandates that claims for child support which were assigned to a government agency are nondischargeable. And as several courts (including the Eighth Circuit) found prior to the addition of § 507(a)(7) to the Act, those claims are to be given preferential treatment in a Chapter 13 plan. If they are not, the automatic stay may be lifted as to the child support arrearages and the claimant may pursue other remedies. *Bunn*, 170 B.R. 670. Such a claim should not be classified with other general unsecured debts receiving only a percentage of the claim. As such, a debt for child support which has been assigned to a government agency should be treated as though it is a priority debt in a Chapter 13 plan: it should be paid in full.

*Id.* at 131–32 (footnotes omitted).[4]

The opinion in *In re Burns*, 216 B.R. 945 (Bankr.S.D.Cal.1998) is representative of the plain language position. That opinion reads in part:

Originally, section 523(a)(5) and section 507(a)(7) contained identical language. A support claim assigned to a governmental entity was both dischargeable and was not entitled to priority in

---

4. For a different perspective, but also an excellent explanation of the controversy, see the opinion in *In re Parker*, 1999 WL 1116825, *2 (Bankr.N.D.Ill.1999). That opinion reads in part:

Section 507(a)(7) of the Bankruptcy Code has been analyzed by several courts faced with issues similar to those now before this Court. **Despite the lack of any apparent ambiguity in section 507(a)(7) of the Bankruptcy Code, the cases do not all reach the same result.** Compare *In re Burns*, 216 B.R. 945 (Bankr.S.D.Cal.1998) with *In re Beverly*, 196 B.R. 128 (Bankr.W.D.Mo.1996).

*In re Burns*, 216 B.R. 945 (Bankr.S.D.Cal. 1998), represents one view with respect to the interpretation of section 507(a)(7) of the Bankruptcy Code. In *Burns*, the debtors sought to modify their chapter 13 plan to separately classify prepetition claims for child support which had been assigned to a government entity from other unsecured claims in order to pay the prepetition claims for child support in full while paying nothing on the other unsecured claims. The court recognized that support claims that have been assigned are treated differently by the plain language of sections 523(a)(5) and 507(a)(7) of the Bankruptcy Code.

The major difference is that section 507(a)(7) of the Bankruptcy Code, which deals with the priority to be afforded support claims, excludes support claims that have been assigned to another entity from receiving priority treatment. By the same token, section 523(a)(5) of the Bankruptcy Code deals with the dischargeability of support claims. Section 523(a)(5) of the Bankruptcy Code provides that while most obligations for support are nondischargeable, if the claim for support has been assigned to another entity, it is dischargeable. 11 U.S.C. sec. 523(a)(5). However, section 523(a)(5) of the Bankruptcy Code contains what might be deemed an exception to the exception from dischargeability for support claims. If a support claim is assigned to a governmental entity, it is nondischargeable. 11 U.S.C. sec. 523(a)(5)(A). There is no analogous exception to the exception in section 507(a)(7) of the Bankruptcy Code. Some courts have regarded the absence of an exception to the exception in section 507(a)(7) of the Bankruptcy Code as a legislative gaffe. Not so the *Burns* court. The court stated: "Although some courts have assumed this was an oversight (citations and footnote omitted), this Court believes if Congress intended to accord priority status to assigned support debts, it has amended the Bankruptcy Code a sufficient number of times since 1981 to have made the appropriate change." *Id.* at 947.

Relying on the plain language of section 507(a)(7) of the Bankruptcy Code, the *Burns* court found that the claim for child support was nondischargeable but was not, nevertheless, entitled to priority treatment. *Id.* at 947. *Id.* at *2–*3 (emphasis added).

distribution. By virtue of a 1981 amendment to section 523(a)(5)(A) debts assigned to a governmental entity as a condition of AFDC eligibility became non-dischargeable. However, there was no corresponding change to section 507(a)(7)(A). (See generally, Lawrence P. King, 4 Collier on Bankruptcy ¶ 523.11[8] at 523–88–9.) Although some courts have assumed this was an oversight, this Court believes if Congress intended to accord priority status to assigned support debts, **it has amended the Bankruptcy Code a sufficient number of times since 1981** to have made the appropriate change. Consequently, this Court agrees with the Debtors' implicit assumption that the assigned support claim is non-dischargeable but does not have priority in payment.

*Id.* at 947 (footnote omitted).

▪ This Court agrees with *In re Burns* because that court's interpretation conforms to the rules of statutory interpretation employed by the Court of Appeals for the Eleventh Circuit. Writing for the court in *In re Griffith*, 206 F.3d 1389, 1393 (11th Cir.2000), *cert. denied*, 531 U.S. 826, 121 S.Ct. 73, 148 L.Ed.2d 37 (2000), Circuit Judge Stanley L. Birch, Jr. explains:

Interpretation of a statute begins "with the language of the statute itself." *United States v. Ron Pair Enters.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). As a general rule, if the language of the statute is plain, then our interpretive function ceases and we should " 'enforce [the statute] according to its terms.' " Id. (quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)).

In interpreting the language of a statute, we generally give "the 'words used' their 'ordinary meaning.' " *Moskal v.*

*United States*, 498 U.S. 103, 108, 111 S.Ct. 461, 465, 112 L.Ed.2d 449 (1990) (quoting *Richards v. United States*, 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962)). We also use interpretive tools, the "canons of construction," which "are no more than rules of thumb that help courts determine the meaning of legislation." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992). Among these canons of construction are the principles "that Congress is presumed to be aware of judicial interpretations of a statute," *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 524, 104 S.Ct. 1188, 1195, 79 L.Ed.2d 482 (1984), superseded by statute on other grounds, 11 U.S.C. § 1113 (1984), that "courts should disfavor interpretations of statutes that render language superfluous," *Connecticut Nat'l Bank*, 503 U.S. at 253, 112 S.Ct. at 1149, and that "[w]e assume that Congress is aware of existing law when it passes legislation," *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32, 111 S.Ct. 317, 325, 112 L.Ed.2d 275 (1990). "Legislative history can be a legitimate guide to a statutory purpose obscured by ambiguity." *Burlington N.R.R. Co. v. Oklahoma Tax Comm.*, 481 U.S. 454, 461, 107 S.Ct. 1855, 1860, 95 L.Ed.2d 404 (1987).

▪ In conformity with the above, this Court finds that the language of section 507(a)(7)(A) *is* plain. Consequently, the Court concludes that its "interpretative function ceases" and it should enforce section 507(a)(7)(A) according to its terms. The key to that enforcement is of course: What constitutes an assignment? Or in other words: Under section 507(a)(7)(A), when is a claim, "assigned to another entity?" The answer is a matter of state law.

### B. Alabama Law

Section 38–10–4, Code of Alabama 1975 reads:

As a condition of eligibility for aid, each recipient of aid to families with dependent children shall be deemed, by accepting aid, *to have made an assignment to the department of the right to any support owed* **up to the amount of aid paid by the department** to the recipient in her own behalf or in behalf of any other person for whom the recipient is receiving aid. The department shall be subrogated to the right of such child or recipients or the person having custody to collect and receive all child support payments and to initiate any support action existing now or in the future under the laws of Alabama.

Code of Alabama 1975, § 38–10–4 (emphasis added).

That section, in conjunction with related sections, has been interpreted as:

The Child Support Act of 1979, codified as sections 38–10–1 through [38–10]–11, Code 1975, provides that recipients of aid to families with dependent children are deemed to have assigned to DHR the right to any child support owed to or for any child up to the amount of aid paid by DHR. The DHR is given the right to collect and receive all child support payments due to the custodian of the child. See § 38–10–4, Code 1975. It also is provided in said act that where child support has been ordered by a court incident to a divorce decree the debt shall be limited to the amount specified in the court decree. The liability for such debt to DHR shall apply only to the support payments made during the period when aid was granted to the recipient. § 38–10–6, Code 1975.

After an assignment has been made, child support collections shall be paid directly to DHR and it will make distribution according to the Social Security Act and amendments thereto. § 38–10–8, Code 1975. The legislature through the provisions of the Child Support Act has given DHR the authority to take appropriate action to assure that a person owing the obligation of child support provides that support. To enable it to carry out this duty, DHR has been authorized by the legislature to collect all child support payments due and to make proper distribution of those payments. *The act clearly provides that DHR can retain only that amount necessary to satisfy the debt incurred by the recipient of aid from DHR. In other words, DHR can only retain an amount from the child support collections sufficient to repay it for the benefits it has given the recipient.* **The balance, if any, will be paid to the child's custodian.**

*Johns v. Johns*, 500 So.2d 1160, 1160–61 (Ala.Civ.App.1986) (parenthetical and emphasis added).

■ Clearly, in Alabama a child support claim is assigned to the State whenever the State pays benefits to a recipient in lieu of that claim; however, it is also clear that the amount of any such assignment is only the amount, "up to the amount paid ..." by the State. The recipient retains the remainder of the claim. And any amount collected by the State over the benefits amount must be returned to the recipient.

### C. Claims 7 and 10

Because both the Bankruptcy Code and Alabama law differentiate between claims that have been assigned and those that have not, and because the claims before the Court clearly contain elements of both types, the Court must consider the separate parts of claims 7 and 10 in order to determine how each part should be paid.

#### 1. Summary of the Facts

In regard to claim number 7, the parties agree that $154.45 of the total claim

amount of $1,735.98, is owed to the State of Alabama as interest and reimbursement of Aid for Dependent Children benefits paid by the State to Barbara Gray. The parties also agree that the remaining $1,581.53 is owed directly to Barbara Gray as child support arrears and interest due from Yolanda Gray.

In regard to claim number 10, the parties did not provide the Court with the same breakdown; however, as stated above, for purposes of this order the Court assumes it is similar to claim 7.

### 2. Payment of the Claims

#### a. The State's Portions

 Pursuant to this Court's interpretation of the language of section 507(a)(7)(A), and the law in Alabama, the Court finds that the State's portions of claims 7 and 10 are captured by the exception to section 507(a)(7). Under Alabama law, the portions paid by the State to Barbara Gray and Essie Byrd were assigned by those individuals to the State. Under the plain language of section 507(a)(7)(A), assigned claims are excluded from priority status. Consequently, the Court must conclude that those portions of claims 7 and 10 are entitled to payment only as general unsecured claims.

#### b. The Individual's Portions

Pursuant to this Court's interpretation of the language of section 507(a)(7)(A), and the law in Alabama, the Court finds that the individual's portions of the claims should be paid as priority claims. Under Alabama law, the portions of claims 7 and 10 that were not assigned to the State, that is, those amount in excess of the amounts paid by the State to the individuals, do not lose the priority status con-

ferred by section 507(a)(7).[5] Consequently, the Court must conclude that those portions of claims 7 and 10 are entitled to payment as priority claims.

### VI. Conclusion

Pursuant to section 507(a)(7)(A) of the Bankruptcy Code, the portions of claims 7 and 10 assigned to the State of Alabama should be paid as general unsecured claims. The individuals' portions should be paid as priority claims.

### VII. Order

It is therefore **ORDERED, ADJUDGED, and DECREED:**

1. The *Trustee's Objection to Claim Number 7* is **SUSTAINED IN PART AND OVERRULED IN PART;**

2. The Chapter 13 trustee shall pay $154.45 of claim number 7 to the State as a **GENERAL UNSECURED CLAIM;**

3. The Chapter 13 trustee shall pay $1,581.53 of claim number 7 to Barbara Gray as a **PRIORITY CLAIM.**

It is further **ORDERED;**

1. The *Trustee's Objection to Claim Number 10* is **SUSTAINED IN PART AND OVERRULED IN PART;**

2. The parties shall determine what portion of claim number 10, if any, is due the State and the trustee shall pay that amount as a general unsecured claim. The parties shall determine what portion of claim number 10, if any, is due Essie Byrd and the trustee shall pay that amount as a priority claim.

3. Within 10 days of the effective date of this order, the parties shall file a

---

5. No issue was raised regarding the only other exception to section 507(a)(7), that is sub-

paragraph (a)(7)(B).

joint statement with the Court describing the division of claim number 10.